455 S.E.2d 821

**Robert L. MILLER and Cynthia Miller, Plaintiffs Below, Appellants,**

v.

**Richard WHITWORTH, Defendant Below,**

and

**Audley Mobile Home Estates, Inc., a West Virginia Corporation, Defendant Below, Appellee.**

No. 22182.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 4, 1994.

Decided March 3, 1995.

---

Laura Coltelli–Rose, Ronald M. Harman, Coltelli & Associates, Martinsburg, for appellants.

Barry P. Beck, Paul R. Weiss, Martinsburg, for appellee, Audley Mobile Homes Estates, Inc.

McHUGH, Justice:

The appellants, Robert L. Miller and Cynthia Miller, appeal the July 12, 1993, order of the Circuit Court of Berkeley County which granted summary judgment for the appellee, Audley Mobile Home Estates, Inc., a West Virginia corporation (hereinafter "Audley Mobile Home Park").[1] For reasons set forth below, we affirm the circuit court's order.

## I

Robert Miller and Cynthia Miller, his wife, the appellants, live in a mobile home which is located within the Audley Mobile Home Park. Mr. Miller alleges that on April 13, 1990, he heard a disturbance outside his home. Upon investigating, he discovered two men in his driveway next to his cars. The men immediately fled in a car once they saw Mr. Miller. Mr. Miller maintains that he followed the two men in order to obtain a license plate number since he was unsure as to whether or not the two men had damaged his cars.

After obtaining the license plate number, Mr. Miller started to return to his mobile home when he realized he was being followed by the two men, one of whom was Richard Whitworth, who allegedly resided with a friend at the Audley Mobile Home Park. Therefore, instead of returning home, Mr. Miller pulled into the driveway of his mother-in-law, who also resided in the Audley Mobile Home Park. Before Mr. Miller could get out of his car, Richard Whitworth smashed the driver's window of Mr. Miller's car, shattering the glass, which injured Mr. Miller's eye, arm, and face. Mr. Miller asserts that he has $14,233.97 in medical bills from the injuries caused by Mr. Whitworth.

Thereafter, Mr. Miller and his wife filed a personal injury action against the Audley Mobile Home Park and Richard Whitworth for the injuries Mr. Miller received on April 13, 1990, when Richard Whitworth struck the window of Mr. Miller's automobile. The appellants alleged that Mr. Whitworth was liable to them for Mr. Miller's injuries since his acts amounted to criminal battery. The appellants further alleged that the Audley Mobile Home Estates, Inc., the operator of the mobile home park where Mr. and Mrs. Miller resided as tenants, was negligent since it failed to take reasonable measures to protect Mr. Miller from the criminal battery. The circuit court disagreed and found that "[i]t was not reasonably foreseeable by Audley Mobile Home Estates, Inc. that [Mr.] Whitworth would engage in criminal conduct, and thereby injur[e] [Mr. and Mrs. Miller]." Therefore, the circuit court granted summary judgment for Audley Mobile Home Estates.

## II

At the outset, we point out that "[a] circuit court's entry of summary judgment is

---

[1]. It does not appear in the record before us that Mr. Whitworth, a defendant below, has responded to the appellants' complaint or has been a party to any of the proceedings below. Therefore, Mr. Whitworth is not a party in this appeal.

reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Furthermore, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). Accordingly, " '[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.' Syl. pt. 4, *Painter v. Peavy,* [192] W.Va. [189], [451] S.E.2d [755] (1994)." Syl. pt. 3, *Cannelton Industries, Inc. v. Aetna Casualty & Surety Company of America,* No. 22164, —— W.Va. ——, 460 S.E.2d 18 (1994). With this in mind, we will now examine the case before us.

### III

The following issue is one of first impression in this State: is a mobile home park owner, who is a landlord, liable to a tenant for injuries a tenant receives from the criminal activity of a third party. The issue is increasingly in the forefront because of society's focus on crime. In spite of the attention this issue[2] has received in the past couple of decades, courts have not formulated a bright-line rule. Irma W. Merrill, *Landlord Liability for Crimes Committed by Third Parties Against Tenants on the Premises,* 38 Vand.L.Rev. 431 (1985). Instead, "[t]he discussion has produced a scattering of opinions rather than one settled rule." *Id.* at 432. Thus, rather than add to the current confusion by attempting to fuse principles from the "scattering of opinions," we shall instead examine the issue using basic tort principles since the case before us has been framed in tort law.[3]

■ In syllabus point 1 of *Parsley v. General Motors Acceptance Corporation,* 167 W.Va. 866, 280 S.E.2d 703 (1981), this Court held: "In order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." Therefore, we must first determine whether or not a landlord has a duty to protect a tenant from the criminal activity of a third party. We are mindful that the determination of whether there is a duty is a question of law and not a question of fact for the jury. *See generally* 57A Am.Jur.2d *Negligence* § 86 (1989).

■ This Court provided a detailed discussion on the concept of duty in *Robertson v. LeMaster,* 171 W.Va. 607, 301 S.E.2d 563 (1983), and concluded in syllabus point 2 that it is well established that "[o]ne who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm." In *Robertson* this Court discussed how to determine the scope of the duty a person owes to

---

**2.** At common law the landlord was given considerable immunity for the conditions of the leased premises. B.A. Glesner, *Landlords as Cops: Tort, Nuisance & Forfeiture Standards Imposing Liability on Landlords for Crime on the Premises,* 42 Case W.Res.L.Rev. 679, 685 (1992) and Irma W. Merrill, Note, *Landlord Liability for Crimes Committed by Third Parties Against Tenants on the Premises,* 38 Vand.L.Rev. 431, 433 (1985). The rationale for this immunity was that the landlord retained no control over the premises once the premises were leased. Merrill, *supra* at 433. It was the tenant who made all repairs and maintained exclusive control over the premises. *Id.*

However, in recent times, the relationship between the landlord and tenant has changed. The landlord is often responsible for structural repairs and is responsible for maintaining the common areas. *Id.* This change in the landlord/tenant relationship has led to differences in how courts are analyzing the duty a landlord owes a tenant.

**3.** Not all of the jurisdictions use tort principles to analyze the liability of a landlord to a tenant for injuries received from the criminal conduct of a third party. The three major analyses used by the courts to resolve this issue are: (1) contract, (2) implied warranty of habitability and (3) tort. Merrill, *supra* at 432. *See also* Christy E. Harris, *The Duty of a Modern Landlord to Protect his Tenants from Crime,* 29 How.L.J. 149 (1986).

another, and concluded that the foreseeability of risk is an important consideration. *Robertson,* 171 W.Va. at 611–12, 301 S.E.2d at 567–68. *See generally* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 33 at 200–01 (5th ed. 1984). This Court also acknowledged that courts should consider the "likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant." *Robertson,* 171 W.Va. at 612, 301 S.E.2d at 568 (citations omitted).

■ Generally, a person does not have a duty to protect others from the deliberate criminal conduct of third parties. 57A Am. Jur.2d *Negligence* § 104 (1989). *See Restatement (Second) of Torts* § 302B cmt. d (1965). *See also Walls v. Oxford Management Co., Inc.,* 137 N.H. 653, 633 A.2d 103, 104 (1993). Some of the policy reasons for this rule, most particularly in a landlord/tenant relationship, include:

> judicial reluctance to tamper with a traditional, common law concept; the notion that the deliberate criminal act of a third person is the intervening cause of harm to another; the difficulty that often exists in determining the foreseeability of criminal acts; the vagueness of the standard the owner must meet; the economic consequences of imposing such a duty; and conflict with the public policy that protecting citizens is the government's duty rather than a duty of the private sector.

*Faheen by Hebron v. City Parking Corp.,* 734 S.W.2d 270, 272 (Mo.Ct.App.1987) (citation omitted). "Normally [a person] has much less reason to anticipate intentional misconduct than he has to anticipate negligence.... This is true particularly where the intentional conduct is a crime, since under ordinary circumstances it may reason-

ably be assumed that no one will violate the criminal law." *Restatement (Second) of Torts* § 302B cmt. d (1965). In other words, a person usually has no duty to protect others from the criminal activity of a third party because the foreseeability of risk is slight, and because of the social and economic consequences of placing such a duty on a person.

However, certain exceptions are recognized in which a person has an obligation to protect others from the criminal activity of a third party. *See Restatement (Second) of Torts* § 302B cmt. e (1965). Usually, this obligation arises in two situations: (1) when a person has a special relationship which gives rise to a duty to protect another person from intentional misconduct or (2) when the person's affirmative actions or omissions have exposed another to a foreseeable high risk of harm from the intentional misconduct. *Restatement (Second) of Torts* §§ 302B cmt. e and 315 (1965). We stress that the above two situations are not exclusive; however, they provide good guidelines.

■ How these exceptions apply to the landlord/tenant relationship thereby imposing a duty on a landlord to protect tenants from the criminal activity of a third party is what must be determined in the case now before us. Pursuant to the first exception, the courts generally have upheld the common law, as set forth in the *Restatement (Second) of Torts* § 314A (1965), by continuing to state that there is no special relationship between a landlord and tenant which imposes a duty on the landlord to protect the tenant from the criminal activity of a third party.[4] *See* 49 Am.Jur.2d *Landlord and Tenant* § 773.5 (Supp.1994) and Gary D. Spivey, Annotation, *Landlord's Obligation to Protect Tenant Against Criminal Activities of Third Per-*

---

**4.** The *Restatement (Second) of Torts* § 314A (1965) states:

(1) A common carrier is under a duty to its passengers to take reasonable action
    (a) to protect them against unreasonable risk of physical harm, and
    (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(2) An innkeeper is under a similar duty to his guests.

(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

*sons,* 43 A.L.R.3d 331 § 2 (1972). *See also Walls, supra* and *Faheen, supra. But see Kline v. 1500 Massachusetts Avenue,* 439 F.2d 477, 485 (D.C.Cir.1970) (the landlord/tenant relationship is analogous to the innkeeper/guest special relationship). These courts stress that a landlord is not an insurer. We agree that a landlord should not have a duty to protect tenants from criminal activity of a third person merely because there is a landlord/tenant relationship.

Pursuant to the second exception, some courts have recognized that there are circumstances in which the landlord's own affirmative actions or omissions may impose a duty to protect the tenant from the criminal activity of a third party.[5] *See* 49 Am.Jur.2d *Landlord and Tenant* § 773.5 (Supp.1994). The rationale for imposing a duty is that " '[a] landlord is not an insurer of his tenants' safety, *but he certainly is no bystander.*' " *Harris, supra* at 162 (footnote and citation omitted). The circumstances which give rise to imposing a duty on the landlord vary according to the facts of each particular case. *Id.* We stress, however, that the duty can only arise when the landlord could reasonably foresee that his own actions or omissions have unreasonably created or increased the risk of injury from the intentional criminal activity. Since this is an emerging area of the law, we decline to anticipate what circumstances will impose a duty on the landlord. Instead, these circumstances will have to be determined on a case-by-case basis.

The appellants in the case before us contend that a landlord has a duty to protect tenants from criminal activity when the landlord has knowledge of various prior crimes being committed by various people on the premises. A few courts have recognized that the landlord's knowledge of prior unrelated incidents of criminal activity alone will give rise to the duty to protect a tenant from the criminal activity. 49 Am.Jur.2d *Landlord and Tenant* § 773.5 (Supp.1994). For example, in *Faheen, supra* at 273–74, the Missouri Court of Appeals concluded that if a landlord/tenant relationship existed, then prior criminal acts which are sufficiently numerous to put a landlord on notice of the criminal activity are sufficient to impose a duty on a landlord to protect a tenant from similar criminal activity. The argument is that a landlord should reasonably foresee the risk to his tenants if he is aware of the prior criminal activity.

Not all courts agree that prior unrelated incidents of criminal activity alone will impose a duty on a landlord to protect a tenant. *See Walls, supra.* As we have already recognized in *Robertson, supra,* the foreseeability of risk is an important consideration when defining the scope of a duty. However, it would be absurd to expect landlords to protect tenants against all crime since it is foreseeable anywhere in the United States. As one court states:

> The trend toward enlarging the duty of landlords and other private parties to provide security against criminal acts, even in the absence of agreements to do so, has the potential of reaching absurd proportions. One can foresee landowners, proprietors of restaurants, stores, theaters,

---

5. For instance, in *Duncavage v. Allen,* 147 Ill. App.3d 88, 100 Ill.Dec. 455, 497 N.E.2d 433 (1986), *appeal denied by* 113 Ill.2d 573, 106 Ill. Dec. 46, 505 N.E.2d 352 (1987), the plaintiff sued the landlord of the plaintiff's decedent who was raped and murdered in her apartment. The plaintiff alleged that the landlord should have reasonably foreseen that the decedent would be harmed from criminal attack by a third party for several reasons. First, a ladder which was left outside on the premises of the apartment complex was used by the attacker to enter a window of the apartment, and, in fact, had previously been used to burglarize the same apartment. The plaintiff also alleged that the window by which the attacker entered had a broken lock which was broken when the same apartment was previously burglarized. Lastly, the plaintiff al-

leged that outside lights around the apartment were either burned out or inoperable. The plaintiff asserted that the landlord knew of the prior burglary from "tenant complaints, from personal inspection and from a citation he received from the Department of Inspectional Services of the City of Chicago." *Id.* at 457, 497 N.E.2d at 435.

The trial court dismissed the count in the complaint which sounded in tort after finding that there was no cause of action. The Appellate Court of Illinois reversed the trial court and found that there was sufficient evidence to support a cause of action which should go to a jury. *Id.* Impliedly, the Appellate Court of Illinois recognized that this particular landlord could have reasonably foreseen that a third party would once again use the ladder to enter the broken window of the apartment.

banks, schools and, indeed, public buildings being civilly responsible for all crimes on their premises.

*Clarke v. J.R.D. Management Corp.,* 118 Misc.2d 547, 461 N.Y.S.2d 168, 170 (N.Y.City Civ.Ct.1983).

Moreover, the economic impact on landlords of housing in high crime areas could be quite severe if known criminal activity in the neighborhood alone will impose a duty on the landlord. Providing security to tenants costs money, and some tenants would not be able to afford the rent a landlord would have to charge to provide security in high crime areas. The result would be that low-income persons may find themselves without any housing. Thus, we conclude that knowledge of prior unrelated incidents of criminal activity alone will not impose a duty on a landlord to protect a tenant from criminal activity.

Accordingly, we hold that under the common law of torts, a landlord does not have a duty to protect a tenant from the criminal activity of a third party. However, there are circumstances which may give rise to such a duty, and these circumstances will be determined by this Court on a case-by-case basis. A landlord's general knowledge of prior unrelated incidents of criminal activity occurring in the area is not alone sufficient to impose a duty on the landlord. However, a duty will be imposed if a landlord's affirmative actions or omissions have unreasonably created or increased the risk of injury to the tenant from the criminal activity of a third party.

## IV

With this in mind, we now examine the facts in the case before us in order to determine whether or not circumstances exist which would warrant imposing a duty on the landlord to protect Mr. Miller from the actions of Mr. Whitworth. The parties do not dispute the existence of a landlord/tenant relationship in the case before us.

The only evidence submitted by the appellants indicating that the landlord should have foreseen the criminal attack on the appellant, Mr. Miller, were the various police reports of crimes previously occurring on the premises of the Audley Mobile Home Park. However, none of these reports would have reasonably caused the owner to have focused upon a specific individual such as Mr. Whitworth.[6] We have stated that evidence of such a nature is not alone sufficient to impose a duty on the landlord to protect the appellants. Therefore, based on the pleadings, affidavits, and depositions in the record before us, we affirm the summary judgment entered by the circuit court below.

Affirmed.

BROTHERTON, J., did not participate.

MILLER, Retired J., sitting by temporary assignment.

---

**6.** In addition to the above, the appellants assert that Mr. Whitworth almost hit a child with a car; however, the child's mother stated in an affidavit that she never reported this incident to the manager of the mobile home park. Moreover, the manager of the mobile home park stated in an affidavit that until Mr. Miller, the appellant, was attacked, she had never received any complaints about Mr. Whitworth. In any event, this evidence alone is not sufficient to bring this case into the exception to the general rule that a landlord does not have a duty to protect tenants from the criminal activity of a third party.