479 S.E.2d 610

**Jane DOE, Plaintiff Below, Appellant,**

v.

**WAL–MART STORES, INC., a Corporation; B.C. Associates Limited Partnership, a Limited Partnership; and Robert Belcher, Defendants Below, Appellees.**

**No. 23351.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 17, 1996.

Decided Nov. 15, 1996.

Richard E. Rowe, Robert Q. Sayre, Jr., Suzanne Jett Trowbridge, Goodwin & Goodwin, Charleston, for Appellant.

Elliott G. Hicks, Kay, Casto, Chaney, Love & Wise, Charleston, for Appellees Wal–Mart Stores, Inc., and Robert Belcher.

Anita R. Casey, Thomas S. Sweeney, Christopher J. Pyles, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for Appellee B.C. Associates Limited Partnership.

PER CURIAM:

This is an appeal[1] by Jane Doe, an individual who was criminally assaulted in a shopping center parking lot, from an order of the Circuit Court of Raleigh County dismissing her tort action against the owner of the parking lot and against the owner and manager of a store that used the parking lot. The action was dismissed under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure on the ground that the appellant had failed to state a cause of action upon which relief could be granted. On appeal, the appellant contends that the circuit court erred in granting the Rule 12(b)(6) motion and in dismissing her cause of action. After reviewing the issues presented and the record filed, this Court agrees with the appellant's assertions. The judgment of the Circuit Court of Raleigh County is, therefore, reversed, and this case is remanded for further development.

On February 23, 1994, Billy Jo Hampton, who was charged with attempted murder in Virginia, approached the appellant and placed a knife at her side as she was preparing to leave the Beckley Crossings Shopping Center located in Raleigh County. He forced her into her car and drove the car out of the shopping center. Some time later, in a remote area of Summers County, Mr. Hampton sexually assaulted the appellant and abandoned her.

Several days later, Mr. Hampton was apprehended in Greensboro, North Carolina, where he had abducted another woman.

The present action was commenced on February 1, 1995, when the appellant filed a complaint in the Circuit Court of Raleigh County against Wal–Mart, Robert Belcher, and B.C. Associates Limited Partnership, who will hereafter often be referred to as the defendants. The complaint alleged that Wal–Mart Stores, Inc., owned, managed, and operated a retail discount store in the Beckley Crossings Shopping Center and that B.C. Associates Limited Partnership owned, operated, and managed the shopping center in which the Wal–Mart store was located. The complaint further alleged that Robert Belcher was the manager of the Wal–Mart store.

In the complaint, the appellant asserted that the defendants held the Beckley Crossings Shopping Center and Wal–Mart store open to the public for the purposes of conducting business and that she was an invitee of the defendants at the time of the February 23, 1994 incident. She averred:

Among other duties, and without limitation, Defendants owed a nondelegable duty to all invitees and licensees upon the premises of the Beckley Crossings Shopping Center and the Wal–Mart retail discount store, including the plaintiff herein to:

a. Maintain the premises, including the parking lot in a reasonably safe condition;

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996, and continuing until further order of this Court.

b. Provide adequate security for the reasonable protection of those lawfully upon the premises;

c. Patrol or police the premises so as to prevent criminal assaults on those lawfully upon the premises;

d. Train, supervise and equip a highly visible and professional security force for the foregoing purposes.

The complaint asserted that the defendants negligently, carelessly, willfully, wantonly, and recklessly failed to perform these duties and were otherwise negligent and that as a proximate result the appellant was injured and damaged in the incident which occurred on February 23, 1994.

Wal–Mart and Mr. Belcher filed a joint answer to the appellant's complaint and moved to dismiss on the ground that the incident giving rise to the claim had occurred as the result of the intervention of an independent criminal act for which they were not responsible, and they suggested that the complaint failed to state a claim upon which relief could be granted. B.C. Associates Limited Partnership also filed an answer and additionally filed a separate motion for summary judgment.

On April 3, 1995, a hearing was held on the motion of Wal–Mart and Mr. Belcher to dismiss for failure of the complaint to state a claim upon which relief could be granted, and on September 1, 1995, the circuit court issued a memorandum opinion concluding that the appellant could prove no set of facts consistent with the complaint which would entitle her to relief against any of the defendants. On the same day, the court entered an order granting the motion to dismiss the complaint for failure to state a cause of action upon which relief could be granted as to all the defendants.

In the present proceeding, the appellant's principal assertion is that the trial court erred in finding that the complaint failed to state a cause of action upon which relief could be granted. The appellant also claims that in ruling in the case the trial court failed to recognize the heightened duty owed by a business to its invitees and that the trial court failed to recognize that a business possessor of land may be held civilly liable for criminal attacks on its invitees.

In dismissing the action under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure on the ground that the complaint failed to state a cause of action upon which relief could be granted, the trial court stated:

Upon reviewing the briefs and correspondence submitted by counsel, and the cases cited, it is my opinion that this motion can be decided by reference to *Miller v. Whitworth,* [193] W.Va. [262], 455 S.E.2d 821 (1995).

*Miller* was an action by a tenant of a mobile home park against the landlord because another tenant had attacked the Plaintiff. The Court affirmed summary judgment for the landlord. The Court first analyzed the general issue of duty, and, followed its earlier opinion in *Robertson v. LeMaster,* 171 W.Va. 607, 301 S.E.2d 563 (1983), which held that "the foreseeability of risk is an important consideration," in determining the scope of the duty owed. *Miller,* [at 266, 455 S.E.2d] at 825, quoting from *Robertson,* at 611–612 [301 S.E.2d 563].

\* \* \* \* \* \*

Although there is arguably a legal duty, as asserted in the Complaint, Par. VII, Subparts a and b, to "[m]aintain the premises, including the parking lot in a reasonably safe condition," and to "[p]rovide adequate security for the reasonable protection of those lawfully upon the premises," these duties depend on negligence standards which require foreseeability. As established by *Miller,* the knowledge of general criminal activity is not sufficient to create foreseeability that a specific criminal act will occur, and it is not within the scope of "reasonable protection" to require the business to protect its invitee from an unforeseeable specific criminal act.

The Plaintiff's complaint therefore relies on a supposed legal standard that does not exist, and it fails Rule 12(b)(6). The Plaintiff can prove no set of facts consistent with the Complaint pleadings that would entitle her to relief against the named Defendants.

■ In a number of cases this Court has consistently held that a trial court should not grant a Rule 12(b)(6) motion to dismiss unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. This rule was set forth in syllabus point 2 of *Sticklen v. Kittle*, 168 W.Va. 147, 287 S.E.2d 148 (1981), as follows:

"The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl., *Flowers v. City of Morgantown*, [166] W.Va. [92], 272 S.E.2d 663 (1980).

*See also Garrison v. Herbert J. Thomas Memorial Hospital Association*, 190 W.Va. 214, 438 S.E.2d 6 (1993); *Sesco v. Norfolk and Western Railway Company*, 189 W.Va. 24, 427 S.E.2d 458 (1993); and *Chapman v. Kane Transfer Company, Inc.*, 160 W.Va. 530, 236 S.E.2d 207 (1977), which cites *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ Additionally, the Court has held that, in assessing a plaintiff's appeal from an order of a lower court granting a motion to dismiss under Rule 12(b)(6), the allegations contained in the plaintiff's complaint must be accepted as true and construed most favorably in his behalf. *See Wiggins v. Eastern Associated Coal Corporation*, 178 W.Va. 63, 357 S.E.2d 745 (1987), and *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978).

With these principles in mind, this Court must address the underlying question in the present case of whether the appellant in her complaint has presented a legal theory of recovery, or legal theories of recovery, which would entitle her to relief if, at trial, she can prove the factual allegations necessary to bring her case within that theory or those theories.

In addressing this question, the Court believes that it is important to note that the defendants occupy fundamentally different positions in relation to the allegations in the complaint. Defendant Wal–Mart occupied a store which it held open to the public and to which it invited the public. Defendant Belcher managed the Wal–Mart store. On the other hand, defendant B.C. Associates Limited owned the Wal–Mart store building but did not operate the store; B.C. Associates and Wal–Mart occupied a landlord-tenant relationship. To complicate matters further, the incident giving rise to the present case occurred not in the Wal–Mart store, but on a parking lot owned by B.C. Associates Limited, but shared by Wal–Mart with other tenants of the shopping center on a common basis. Further, under its lease with Wal–Mart, B.C. Associates Limited had responsibility for maintaining the parking lot, although there is some suggestion in the record that Wal–Mart exercised some control over the parking lot, since it possessed the right to control certain aspects of the lighting on the parking lot.

The different positions occupied by the various defendants are important in this case because our law distinguishes between the tort duties of a landlord and those of a possessor of land who holds it open to the public for the public to enter at the possessor's invitation. This fundamental distinction was recently recognized by this Court in *Miller v. Whitworth*, 193 W.Va. 262, 455 S.E.2d 821 (1995). In that case, which involved a landlord, the Court recognized that some individuals or entities, because of their status alone, have a duty to protect others on their premises from the criminal activities of third parties. In determining who or what these individuals or entities are, the Court quoted with approval *Restatement (Second) of Torts* § 314A (1965), which states:

(1) A common carrier is under a duty to its passengers to take reasonable action

(a) to protect them against unreasonable risk of physical harm, and

(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(2) An inkeeper is under a similar duty to his guests.

(3) A possessor of land who holds it open to the public is under a similar duty

to members of the public who enter in response to his invitation.

(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

Noting that landlords did not fall within this group of individuals or entities, and finding that there were sound policy reasons for not including landlords among those who had a duty to protect others because of status alone, this Court, in *Miller v. Whitworth, supra,* explicitly excluded landlords from the group of those who, because of status alone, owe individuals on their premises a duty to protect against the criminal activity of third parties.

■ Although in *Miller v. Whitworth, supra,* the Court declined to impose the duty discussed on landlords because of their status as landlords, the Court did recognize that when landlords by their affirmative actions or omissions expose others to a foreseeable high risk of harm from a third person's intentional misconduct, the landlord may be held liable. In reaching this conclusion, the Court, in syllabus point 5 of *Miller v. Whitworth* reiterated syllabus point 2 of *Robertson v. LeMaster,* 171 W.Va. 607, 301 S.E.2d 563 (1983):

One who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm.

A careful reading of this indicates that before this duty is imposed on a landlord, or anyone occupying any status, such individual must "realize" or "should realize" that he has created an unreasonable risk of harm. In *Miller v. Whitworth, supra,* the Court focused on what could create, or should create, such a realization. The Court definitively concluded: "A landlord's general knowledge of prior unrelated incidents of criminal activity occurring in the area is not alone sufficient to impose a duty on the landlord." *Miller v. Whitworth, supra* at 268, 455 S.E.2d at 827. In syllabus point 6 of *Miller v. Whitworth,*

the Court summarized its conclusions as follows:

Under the common law of torts, a landlord does not have a duty to protect a tenant from the criminal activity of a third party. However, there are circumstances which may give rise to such a duty, and these circumstances will be determined by this Court on a case-by-case basis. A landlord's general knowledge of prior unrelated incidents of criminal activity occurring in the area is not alone sufficient to impose a duty on the landlord. However, a duty will be imposed if a landlord's affirmative actions or omissions have unreasonably created or increased the risk of injury to the tenant from the criminal activity of a third party.

■ Unlike a landlord, a possessor of land who holds the land open to members of the public to enter in response to his invitation, by virtue of his status alone, does have a duty to protect persons on the premises from the criminal activity of third parties. *See Restatement (Second) of Torts* § 314A (1965), as quoted in *Miller v. Whitworth, supra.*

■ The law on this duty is fairly well developed in West Virginia in cases which have been classified or characterized as "business invitee" cases. The leading case is *Puffer v. Hub Cigar Store,* 140 W.Va. 327, 84 S.E.2d 145 (1954), in which this Court, to a considerable extent, discussed the duty which the possessor of business premises owes to a business invitee on the premises. The first point made in the *Puffer* case is that:

A person is an invitee when for purposes connected with the business conducted on the premises he enters or uses a place of business.

Syllabus point 2, *Puffer v. Hub Cigar Store, Id.*

■ The *Puffer* case goes on to indicate that the possessor of the business premises is not an insurer for the safety of an invited person on such premises if such owner is not guilty of negligence or willful or wanton misconduct and no nuisance exists. *Puffer,* however, also holds:

The owner or the occupant of premises owes to an invited person the duty to exercise ordinary care to keep and maintain the premises in a reasonably safe condition. This duty requires the owner or the occupant of the premises to exercise ordinary care to protect an invited person from injury inflicted by other persons present on such premises; and if such owner or occupant fails to perform such duty and his negligence is the proximate cause of injuries inflicted upon an invited person by another person such owner or occupant is liable to such invited person.

Syllabus point 4, *Puffer v. Hub Cigar Store, Id.* Further:

A person is not liable for damages which result from an event which was not expected and could not reasonably have been anticipated by an ordinary prudent person.

Syllabus point 6, *Puffer v. Hub Cigar Store, Id.*

In *Haddox v. Suburban Lanes*, 176 W.Va. 744, 349 S.E.2d 910 (1986), this Court essentially reiterated the principles in *Puffer v. Hub Cigar Store.*

In *Puffer v. Hub Cigar Store* and *Haddox v. Suburban Lanes,* the Court did not precisely define what is "foreseeable", but the Court indicated that something is "foreseeable" which is anticipated by the ordinary reasonable person. This concept is somewhat related to the idea of realization involved in *Robertson v. LeMaster, supra,* and *Miller v. Whitworth, supra,* and for the general reasons stated in *Miller v. Whitworth* and consistent with the holding therein, the Court believes that foreseeability cannot arise from knowledge of prior unrelated incidents of criminal activity occurring in the area since crime generally is foreseeable anywhere in the United States.[2]

With these principles in mind, we now address the facts of the present case. First, we note that the crime in issue occurred on a parking lot and not in the Wal–Mart store

adjoining the parking lot. This circumstance would suggest that the relationship of the parties viz-a-viz the Wal–Mart store itself is irrelevant. The real question involves the defendants' relationship to the parking lot. It appears from the documents filed that defendant B.C. Associates Limited Partnership was the owner of the parking lot property and the landlord of it. However, as recognized by the circuit court, the fact that it occupied the status of landlord does not, under *Miller v. Whitworth,* render it liable, or potentially liable, to the appellant for the injury sustained. As indicated in *Miller v. Whitworth,* a landlord may be liable only if its affirmative actions or omissions have unreasonably created or increased the risk of injury to the appellant from a third party.

Apart from B.C. Associates Limited Partnership being a landlord, the documents in the present case suggest the possibility that it possessed another status, that it, as possessor of the parking lot, was holding the premises open for business invitees to enter and use the premises and the adjoining areas. In effect, the documents suggest that B.C. Associates Limited Partnership was operating the Beckley Crossings Shopping Center as a business open to the public for the purpose of making a profit. As such it fell within the status of one who holds his property open to invitees for purposes connected with the business on the premises, and, in line with *Puffer v. Hub Cigar Store, supra,* had a duty to protect the appellant from the foreseeable criminal activity of third parties on the premises.

Although it is not wholly clear from the documents filed by the court in the present case, it also appears that defendant Wal–Mart and its manager, Robert Belcher, might have exercised some control over the parking lot, in that Wal–Mart had some say relating to the lighting of the parking lot and possibly had the right to conduct certain business activities upon the parking lot. Rather clear-

**2.** As it relates to the present case, in the absence of some very special circumstance, such as a specific prior warning from the police to the defendant, or a recent prior threatening note, or some other special circumstance that would warn anyone of a pending crime, the Court be-

lieves that at the very least it would have to be shown that crimes of a very similar nature must have occurred on the premises or very close thereto, at a close time, for those inviting others to the property to render the crime which was committed foreseeable.

ly, Wal–Mart, if it in some way was involved with the possession of the parking lot or regulation or control of it, would be possessing, regulating, or controlling it for the purpose of advancing its business conducted in the adjoining store and, in effect, would be inviting individuals to come upon the parking lot for the purpose of conducting or advancing its business activities. As such it too would fall within the rule of *Puffer v. Hub Cigar Store, supra.*

In the present case, since the appellant's action was dismissed under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, there was no significant development of the factual background of the appellant's complaint. In the absence of such development, it is obvious that this Court cannot in detail discuss the actual relationships of the defendants to the parking lot.

However, as indicated in syllabus point 2 of *Sticklen v. Kittle, supra,* in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, it is incumbent upon a court not to dismiss a complaint or affirm the dismissal of a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Further, as indicated in *Wiggins v. Eastern Associated Coal Corporation, supra,* and *Harless v. First National Bank in Fairmont, supra,* the allegations contained in the complaint must be accepted as true and construed most favorably in the plaintiff's behalf in assessing the applicability of a Rule 12(b)(6) dismissal.

The essential legal allegations in the complaint in the present case state:

Among other duties, and without limitation, Defendants owed a nondelegable duty to all invitees and licensees upon the premises of the Beckley Crossings Shopping Center and the Wal–Mart retail discount store, including the plaintiff herein to:

a. Maintain the premises, including the parking lot in a reasonably safe condition;

b. Provide adequate security for the reasonable protection of those lawfully upon the premises;

c. Patrol or police the premises so as to prevent criminal assaults upon those lawfully upon the premises.

d. Train, supervise and equip a highly visible and professional security force for the foregoing purposes.

\* \* \* \* \* \*

Defendants negligently, carelessly, willfully, wantonly and recklessly failed to perform and breached each of the foregoing duties owed to the plaintiff, and were otherwise negligent in regards to their duties owed to the plaintiff, and, as a proximate cause of all of which, Plaintiff was injured and damaged as set forth below.

As indicated in syllabus point 4 of *Puffer v. Hub Cigar Store, supra,* the owner or occupant of premises owes to a business invitee on those premises the duty to exercise ordinary care to keep and maintain the premises in a reasonably safe condition. An examination of the appellant's complaint very explicitly alleges that the defendants in the present proceeding had the duty to "maintain the premises, including the parking lot in a reasonably safe condition", and that allegation properly states the law.

If the evidence in the case ultimately shows that B.C. Associates Limited Partnership kept the parking lot open to business invitees as contemplated by *Puffer,* then the appellant's allegation regarding the duty of the B.C. Associates Limited Partnership to maintain the premises in a reasonably safe condition was well taken and would support a recovery under the *Puffer* theory, so long as the appellant can demonstrate the other factors which must be shown under *Puffer v. Hub Cigar Store, supra,* to establish the liability of a possessor of premises held open to business invitees. Similarly, if Wal–Mart and Wal–Mart's manager also in some way participated in the possession of the parking lot and opened it to business invitees in conjunction with the conduct of the Wal–Mart business on the overall premises, the Court believes that it could be held liable, so long as the additional factors set forth in *Puffer* are established. The Court further notes that the appellant's complaint specifically alleges that the defendants negligently, carelessly, willfully, wantonly, and recklessly

failed to perform and breached each of the duties alleged in the complaint, duties which would include the duty to maintain the premises, including the parking lot, in a reasonably safe condition.

Under the overall circumstances of this case, the Court believes that allegation "a" of the complaint, as quoted above, is adequate to allege a cause of action under the business invitee status rule set forth in *Puffer v. Hub Cigar Store, supra,* and that, as a consequence, the trial court erred in granting the defendants dismissal under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.[3]

■■■ Having come to this conclusion, the Court cannot state that the trial court's conclusions in this case were wholly erroneous. Wal–Mart and Wal–Mart's manager, Robert Belcher, from what has been presented to this Court, have in no way been connected with the ownership, as opposed to the possession, of the premises where the accident occurred and cannot, in this Court's view, be classified as a landlord. As a consequence, the Court cannot conclude that Wal–Mart or its manager would have any sort of landlord status liability, given the holding in *Miller v. Whitworth, supra.* Further, although B.C. Associates Limited Partnership is and was a landlord as was recognized by the trial court, the mere fact that it occupied the status of a landlord did not impose upon it a duty for the safety of the appellant under the principles set forth in *Miller v. Whitworth.* While the Court believes that it might be shown that by its affirmative actions or omissions B.C. Associates Limited Partnership exposed the appellant to a foreseeable high risk of harm and thus incurred liability, the Court believes that the appellant must show more than a general knowledge on the part of B.C. Associates Limited Partnership of prior unrelated incidents of criminal activity occurring in the area.

In spite of this, the Court believes that, given the allegations in the complaint, it might be possible for the appellant to show that B.C. Associates Limited Partnership, by its affirmative actions or admissions, had exposed the appellant to a foreseeable high risk of harm from the miscreant in the present case. Under the circumstances, the Court believes that the trial court erred in granting the Rule 12(b)(6) motion as to B.C. Associates Limited Partnership as a landlord.

For the reasons stated, the Court believes that the trial court erred in granting the defendants' Rule 12(b)(6) dismissals in the present case and that this case should be remanded for further development.

Reversed and remanded.

RECHT, J., sitting by temporary assignment.

**3.** This conclusion is based solely on allegation "a" that the defendants had a duty to "[m]aintain the premises, including the parking lot in a reasonably safe condition." While *Puffer* and *Haddox* both recognize this, this Court is unaware of any West Virginia law which *specifically* supports allegations "b", "c", and "d" that the defendant had the duty to provide security (presumably in some specific sense, such as security guards), the duty to patrol or police the premises, or the duty to train, supervise, and equip a highly visible and professional security force. Of course, if B.C. Associates Limited Partnership had affirmatively assumed this duty as landlord, it might, under *Miller v. Whitworth,* depending upon the nature of the duty affirmatively assumed, have some duty to the appellant.