# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

KENNETH RUSH, as Personal Representative
of the ESTATE OF TIMOTHY RUSH, deceased,
Plaintiff Below, Petitioner

**FILED**
**June 15, 2023**
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

vs.) No. 22-ICA-133          (Cir. Ct. Kanawha Cnty. Case No. 20-C-832)

DANASDOME, LLC, DANA PITCHFORD,
KUPPEL, LLC, HA TO TA, and THANH TA,
Defendants Below, Respondents

## MEMORANDUM DECISION

Petitioner Kenneth Rush, as Personal Representative of the Estate of Timothy Rush, deceased ("the Estate"), appeals the Circuit Court of Kanawha County's August 24, 2022, orders.[1] In those orders, the circuit court granted summary judgment to Respondents DanasDome LLC ("DanasDome"), Dana Pitchford, and Kuppel, LLC ("Kuppel"), and granted a motion to dismiss filed by Respondents Ha To Ta and Thanh Ta ("the Tas"). DanasDome, Mr. Pitchford, Kuppel, and the Tas timely filed responses in support of the circuit court's orders.[2] The Estate filed a reply.[3]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For

---

[1] Specifically, the orders on appeal are titled "Order Granting Kuppel, LLC's Motion for Summary Judgment," "Order Granting Defendant DanasDome, LLC, and Dana Pitchford's Motion for Summary Judgment," and "Order Granting Defendants' Motion to Dismiss." Although not specifically noted by the circuit court, the orders are considered Rule 54(b) orders because Joseph Lucas still has claims pending against him in this matter. W. Va. R. Civ. P. 54(b).

[2] DanasDome and Mr. Pitchford filed a joint summary response. Kuppel and the Tas filed separate responses.

[3] The Estate is represented by David A. Dobson, Esq., and Peter A. Pentony, Esq. DanasDome and Mr. Pitchford are represented by David F. Nelson, Esq. Kuppel is represented by Stuart A. McMillan, Esq., Gabriele Wohl, Esq., Unaiza R. Tyree, Esq., and J. Tyler Barton, Esq. The Tas are represented by James A. Muldoon, Esq.

1

these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This appeal arises out of the fatal shooting of Timothy Rush by Joseph Lucas, Jr.,[4] that occurred outside of the Dome Bar & Grill ("the Dome") in the early morning hours on September 30, 2018. The Dome was a liquor serving establishment located in Kanawha City, West Virginia. At the time of the shooting, the Dome was operated by DanasDome, whose sole member was Mr. Pitchford. DanasDome leased the building where the Dome was located from Kuppel, whose sole member is Ha To Ta.[5] Prior to January or February of 2017 when DanasDome assumed operations, Kuppel operated the Dome.[6]

On the night of the shooting, Mr. Rush and his cousin Joshua Lawson arrived at the Dome at approximately 2:40 a.m. Mr. Lucas arrived at the Dome at approximately 2:45 a.m. Samantha Olish, a bartender at the Dome, kept the Dome open to select friends, including Mr. Rush, Mr. Lawson, and Mr. Lucas, past its closing time and continued to serve alcohol.[7] Ms. Olish had been involved romantically at some point with both Mr. Rush and Mr. Lucas. Mr. Lucas testified that he communicated with Ms. Olish prior to arriving at the Dome and the two had an agreement that they would be leaving together. At some point, there was allegedly a confrontation between Ms. Olish and Mr. Lucas in the Dome. It is disputed whether or not the confrontation involved Mr. Rush and Mr. Lawson. According to Mr. Lawson, Ms. Olish asked him and Mr. Rush to stay in the bar to protect her.

At some point, Mr. Lucas left the Dome for approximately thirty minutes. After Mr. Lucas left, Ms. Olish closed the bar and she, Mr. Rush, and Mr. Lawson went outside to talk. Mr. Lucas testified that while he was gone, he attempted to call Ms. Olish. She did not answer, so he returned to the Dome and saw Mr. Rush and Mr. Lawson standing in the parking lot. Mr. Rush was talking to Ms. Olish at her car door. Mr. Lucas grabbed his firearm and exited his vehicle. He then fired multiple shots at Mr. Rush in the street in front of the Dome. Mr. Rush died at the scene. The shooting occurred at approximately 6:00 a.m.

---

[4] Mr. Lucas eventually would plead guilty to second degree murder and be sentenced to forty years in prison.

[5] According to the deposition testimony of Ha To Ta, Kuppel is still an active organization.

[6] Prior to DanasDome assuming operations of the Dome, Mr. Pitchford worked as a bartender at the Dome.

[7] The Dome was scheduled to close at 3:00 a.m.

On September 24, 2020, the Estate filed the underlying complaint against DanasDome, Dana Pitchford, Kuppel, the Tas, and Mr. Lucas. Specifically, the complaint asserted a claim for negligence by DanasDome and/or Mr. Pitchford for breach of various duties; a claim for wrongful death against Mr. Lucas for the murder of Mr. Rush; a claim for maintaining a public nuisance against the Tas; and negligence by Ha To Ta and/or Kuppel. After discovery was conducted, on or about December 14, 2021, Kuppel, DanasDome, and Mr. Pitchford moved for summary judgment. On or about December 15, 2021, the Tas moved to dismiss. On August 18, 2022, the circuit court held hearings on the various defendants' motions. By three separate orders dated August 24, 2022, the circuit court granted the motions.

Specifically, in regard to Kuppel, the circuit court concluded that there were no genuine issues of material fact and that under West Virginia law Kuppel, as a landlord, did not owe a limitless duty to Mr. Rush to protect him from any unforeseen criminal activity. In regard to Mr. Pitchford, the circuit court concluded that since the Estate did not oppose the motion for summary judgment in favor of Mr. Pitchford personally, he was entitled to summary judgment. In regard to DanasDome, the circuit court concluded that there were no genuine issues of material fact and DanasDome did not owe or breach any duty to Mr. Rush to protect him from Mr. Lucas' unforeseen criminal act. In regard to the Tas, the circuit court concluded the Estate's claim for a public nuisance was improper because there was no evidence that the Tas operated or were involved in a joint venture regarding the Dome at the time of the shooting and there was nothing that established the sale of alcohol was an abnormally dangerous activity, and further, there was no authority that authorized the Estate to pursue monetary damages for a public nuisance claim. The circuit court further concluded that the Tas did not have a duty to require DanasDome to comply with the laws concerning serving alcohol or have proper security and that the Estate failed to adequately allege how the Tas owed Mr. Rush a duty for acts that occurred several hours after the Dome closed and occurred off of the leased premises. It is from these orders that the Estate appeals.

On appeal, we apply the following standards of review: "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). "A court reviewing the sufficiency of a complaint should view the motion to dismiss with disfavor, should presume all of the plaintiff's factual allegations are true, and should construe those facts, and inferences arising from those facts, in the light most favorable to the plaintiff." *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 520, 854 S.E.2d 870, 882 (2020) (citing *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 538, 236 S.E.2d 207, 212 (1977)). Likewise, "[a] circuit court's entry of summary judgment is reviewed *de novo.* Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Further, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry

3

concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

In regard to the negligence claim asserted by the Estate against Ha To Ta and Kuppel, to state a claim for negligence: "a plaintiff is required to show four basic elements: duty, breach, causation, and damages." *Gable v. Gable*, 245 W. Va. 213, 225, 858 S.E.2d 838, 850 (2021). In West Virginia, "[g]enerally, a person does not have a duty to protect others from the deliberate criminal conduct of third parties." *Miller v. Whitworth*, 193 W. Va. 262, 266, 455 S.E.2d 821, 825 (1995) (citation omitted). This is partly because of:

> judicial reluctance to tamper with a traditional, common-law concept; the notion that the deliberate criminal act of a third person is the intervening cause of harm to another; the difficulty that often exists in determining the foreseeability of criminal acts; the vagueness of the standard the owner must meet; the economic consequences of imposing such a duty; and conflict with the public policy that protecting citizens is the government's duty rather than a duty of the private sector.

*Id.* (citation omitted). The Supreme Court of Appeals of West Virginia ("SCAWV") has further cautioned:

> Courts have traditionally recognized that, "[a] line must be drawn between the competing policy considerations of providing a remedy to everyone who is injured and of extending exposure to tort liability almost without limit. It is always tempting to impose new duties and, concomitantly, liabilities, regardless of the economic and social burden. Thus, the courts have generally recognized that public policy and social considerations, as well as foreseeability, are important factors in determining whether a duty will be held to exist in a particular situation."

*Crum v. Equity Inns, Inc.*, 224 W. Va. 246, 258, 685 S.E.2d 219, 231 (2009) (per curiam) (citation omitted).

However, SCAWV has recognized exceptions to the general rule that there is no duty to protect others from deliberate criminal conduct "(1) when a person has a special relationship which gives rise to a duty to protect another person from intentional misconduct or (2) when the person's affirmative actions or omissions have exposed another to a foreseeable high risk of harm from the intentional misconduct." *Miller,* 193 W. Va. at 266, 455 S.E.2d at 825. "Under the established standard in *Whitworth,* there has to be more than suspicion that someone may commit a crime at or on a person's property for the duty to arise." *Strahin v. Cleavenger*, 216 W. Va. 175, 187, 603 S.E.2d 197, 209 (2004).

Here, the complaint alleges that Ha To Ta/Kuppel had a duty to take "appropriate action" to ensure that DanasDome and/or Mr. Pitchford lawfully operated the Dome and provide security for the Dome's patrons and that the failure of Ha To Ta/Kuppel to take such actions proximately caused the death of Mr. Rush. The Estate asserts that Mr. Rush being shot was foreseeable to Ha To Ta/Kuppel because during the time that Ha To Ta/Kuppel operated the Dome, the establishment was cited several times for illegally selling alcoholic beverages, a fight broke out in the Dome, and a shooting occurred in the Dome.

The first *Whitworth* exception does not apply as there is no allegation of a special relationship between Ha To Ta/Kuppel and Mr. Rush. Rather, the Estate relies on the second exception contained in *Whitworth*. However, taking the allegations in the complaint as true and viewing the facts in the light most favorable to the Estate, there is nothing that gives rise to even a mere suspicion that someone may commit a crime at or near the Dome. Prior citations for illegal alcohol sales and two unrelated violent incidents occurring years earlier, while the Dome was operated by a different entity than DanasDome, do not make the risk of criminal conduct of a general nature such as that of Mr. Lucas high and foreseeable to Ha To Ta/Kuppel. Under the facts of this case, there is simply not enough to impose a duty on Ha To Ta/Kuppel, as landlord, to protect a third-party patron of his lessee from the unforeseeable intentional criminal act of another third-party patron of the lessee. Accordingly, the circuit court did not err in dismissing the Estate's claim for negligence against Ha To Ta and granting summary judgment in favor of Kuppel.

Likewise, in regard to the negligence claim asserted by the Estate against DanasDome,[8] the evidence in the record is not sufficient to create a duty on DanasDome to protect Mr. Rush from the intentional criminal act of Mr. Lucas. Even viewing the facts in the light most favorable to the Estate, the service of alcohol after hours to Mr. Lucas does not make the general nature of Mr. Lucas' criminal conduct reasonably foreseeable to DanasDome. There is nothing in the record that indicates that DanasDome was aware that Mr. Lucas had a propensity for violence when served alcohol,[9] had a propensity for violence toward Mr. Rush, or that service of alcohol after hours had led to other violent

---

[8] Though the Estate combines its arguments against DanasDome and Mr. Pitchford on appeal, the circuit court concluded that since the Estate did not oppose the motion for summary judgment in favor of Mr. Pitchford personally, he was entitled to summary judgment. The Estate does not specifically argue that this was error on appeal. Accordingly, pursuant to of Rule 10(c)(7) of the Rules of Appellate Procedure, we decline to address the circuit court's grant of summary judgment in favor of Mr. Pitchford.

[9] Indeed, there was testimony that Mr. Lucas had been "chill" on other occasions when he was at the Dome.

5

encounters between Dome patrons. Accordingly, the circuit court did not err granting summary judgment in favor of DanasDome.

In regard to the public nuisance claim asserted by the Estate against the Tas, the complaint alleges that the Tas' property where the Dome was operated constituted a public nuisance pursuant to West Virginia Code § 60-6-16 (1939).[10] West Virginia Code § 60-6-16 provides that "[a] place where alcoholic liquor is manufactured, sold, stored, possessed, given away, or furnished contrary to law shall be deemed a common and public nuisance." West Virginia Code § 60-6-16 goes on to specify:

> A person who shall maintain, or shall aid or abet or knowingly be associated with others in maintaining such common and public nuisance shall be guilty of a misdemeanor and, upon conviction thereof shall be punished by a fine of not less than $100 nor more than $500, or by confinement in jail not less than sixty days nor more than six months for each offense, and judgment shall be given that such nuisance be abated or closed as a place for the manufacture, sale, storage, possession, giving away, or furnishing contrary to law of alcoholic liquor, as the court may determine.

In addition, West Virginia Code § 60-6-17 (1935) provides, in part, that "[t]he commission, its agents, the Attorney General, the prosecuting attorney, or a citizen of the county or municipality where a nuisance as defined in section sixteen of this article is located, may maintain a suit in equity in the name of the state to abate and perpetually enjoin the same."

These Code sections authorize criminal penalties and injunctive relief as remedies for public nuisances as defined by West Virginia Code § 60-6-16; they do not authorize a suit for monetary damages. Accordingly, the circuit court did not err in dismissing the Estate's claim for maintaining a public nuisance pursuant to West Virginia Code § 60-6-16 against the Tas.

Wherefore, based on the foregoing, the circuit court's August 24, 2022, orders are affirmed.

Affirmed.

**ISSUED:** June 15, 2023

---

[10] The complaint incorrectly references West Virginia Code § 60-6-18 (1935) which concerns search warrants related to alcoholic liquors being "manufactured, sold, kept, stored or in any manner held, used or concealed in a particular house or other place in violation of law . . ."

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen