## Judy Luneau v. Peerless Insurance Co., DLD Insurance LTD., d/b/a Landry Insurance and Mark Landry and Pamela Landry

[750 A.2d 1031]

No. 98-238

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed March 24, 2000

Motion for Reargument Denied April 14, 2000

*A. Gregory Rainville* of *Rainville & Associates, P.C.*, and *Michael Rose*, St. Albans, for Plaintiff-Appellant.

*Douglas D. Le Brun* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, for Defendant-Appellee.

**Johnson, J.** Plaintiff Judy Luneau appeals a verdict of the superior court holding that defendant Peerless Insurance Company did not have a duty to indemnify policy holder Robert Wagner for his liability in negligently injuring plaintiff. We affirm.

The trial court found the following facts. Wagner had a homeowner's insurance policy issued by defendant that included personal liability coverage. The policy included a business pursuits exclusion clause that read:

> Coverage E — Personal liability and Coverage F — Medical Payments to Others do not apply to "bodily injury". . . [a]rising out of "business" pursuits of an "insured."

This exclusion does not apply to activities which are usual to non-"business" pursuits.

On September 4, 1994, Wagner was employed as a disc jockey at a wedding reception at the Champlain Country Club in Swanton, Vermont. He was paid $300.00 for the service. At the time, Wagner was regularly employed with Green Mountain Coffee Roasters. For a number of years, however, he had been conducting his disc jockey business on the side. He had printed cards using the business name "Music Unlimited." On his tax returns, he had declared income from his disc jockey activities, including $7,175.00 for 1992, $6,000.00 for 1993 and $5,000.00 for 1994, and had deducted related expenses as business expenses.

On the day of the reception, Wagner set up his own equipment, stacking his loudspeakers next to the dance floor. During the reception he drank several alcoholic beverages. At one point he became involved in a scuffle with an obstreperous and intoxicated guest who was upset because Wagner had forgotten to play a song he had requested.

During the scuffle, one of Wagner's speakers became dislodged and struck plaintiff in the head, knocking her to the floor and causing bleeding, bruising, swelling and a concussion. After the incident, plaintiff suffered from neck, back and shoulder pain. She incurred medical expenses and also lost approximately $5,600.00 in wages for the work she missed due to her injuries.

On February 9, 1995, plaintiff filed a complaint against Wagner alleging that, while Wagner had been "employed as a disc jockey" during the September 4th reception, he had been negligent (1) in "the

placement, use and supervision of the stereo equipment," and (2) in his "physical conduct," resulting in injury to the plaintiff. Plaintiff and Wagner subsequently stipulated to a judgment that Wagner was liable to plaintiff in the amount of $60,000.00, which the court entered. As part of the settlement, Wagner assigned any claim to plaintiff he might have against defendant arising out of the matter.

On February 7, 1997, plaintiff filed a complaint against defendant seeking indemnification for the judgment. Defendant filed a motion for summary judgment, arguing that the injury was excluded by the policy as a matter of law. The court denied the motion, held a bench trial and issued a decision in favor of defendant. It determined that Wagner had been negligent both in his placement of the speakers and in becoming involved in the shoving match, and that each act of negligence was a proximate cause of plaintiff's injuries. The court denied coverage, however, based on its conclusion that both acts of negligence fell within the business pursuits exclusion of Wagner's policy. The court stated that the issue was a question of fact. Because Wagner had been employed as a disc jockey for profit at the time, had engaged in the business of disc jockeying for several years, and had admitted to others that he needed additional insurance to cover any liability related to the business, the court concluded that both the placement of the loudspeakers and the shoving match were "entirely related to his business pursuit at that time."

On appeal, plaintiff argues (1) that the exception for activities usual to nonbusiness pursuits applies, and (2) that the doctrine of concurrent causation should apply so as to provide coverage for her injuries despite the existence of an excluded risk.[1]

## I.

Upon reviewing a verdict from the bench, this Court will not set aside the trial court's factual findings unless they are clearly erroneous. See V.R.C.P. 52(a)(2). Those finding are viewed in a light most favorable to the prevailing party. See *Mullin v. Phelps*, 162 Vt. 250, 260, 647 A.2d 714, 720 (1994). Conclusions of law, however, will be upheld only when the trial court has applied the correct legal standard and the conclusions are reasonably supported by the factual

---

[1] Defendant argues that the trial court erred in denying its summary judgment motion, following a "four corners" analysis of the complaint and the policy language. Because we affirm the court's result (on slightly different grounds) that defendant has no duty to indemnify, it is unnecessary to second-guess the court's denial of summary judgment.

findings. See *Schnabel v. Nordic Toyota, Inc.*, 168 Vt. 354, 357, 721 A.2d 114, 118 (1998).

## A.

As a preliminary matter, the parties dispute the degree of deference that this Court should give the trial court's decision that the scuffle was entirely related to Wagner's business pursuits. Defendant claims that this is a finding of fact, to which the clearly erroneous standard applies. Plaintiff, on the other hand, claims that it is really a conclusion of law, to which this Court owes no deference.

■ The court's opinion is not separated into findings of fact and conclusions of law, but states that whether or not a particular activity falls within the business pursuits exclusion is a question of fact to be decided on a case-by-case basis. However, the conclusion that Wagner's conduct falls within the business pursuits exclusion requires both a factual determination as to the precise nature of Wagner's conduct and a legal determination as to whether the language of the business pursuits exclusion describes that conduct. As such, it is a mixed question of fact and law, permitting de novo review of the legal determination involved.[2]

## B.

■ We turn now to the interpretation of the business pursuits exclusion clause of Wagner's insurance policy. An insurance policy is a contract to indemnify. See *Moultroup v. Gorham*, 113 Vt. 317, 320, 34 A.2d 96, 98 (1943). The interpretation of a contract is a question of law unless the meaning of the contract is ambiguous. See *Housing Vermont v. Goldsmith & Morris*, 165 Vt. 428, 430, 685 A.2d 1086, 1088 (1996). Any ambiguity in an insurance policy is resolved in favor of coverage. See *Cooperative Fire Ins. Ass'n v. Bizon*, 166 Vt. 326, 333, 693 A.2d 722, 727 (1997).

The business pursuits exclusion in the policy provides:

---

[2]Defendant cites two cases, *Pullen v. Cincinnati Ins. Co.*, 400 So. 2d 393 (Ala. 1981), and *U.S.F. & G. Ins. Co. v. Brannan*, 589 P.2d 817 (Wash. Ct. App. 1979), in support of its position. It is true that both cases refer to the issue of whether a certain activity falls within a business pursuits exclusion as a question of fact, and subject the trial court's, or the jury's, conclusion to deferential review, but in neither case does the reviewing court doubt that the trial court used the correct interpretation of the business pursuits exclusion.

Coverage E — Personal liability and Coverage F — Medical Payments to Others do not apply to "bodily injury". . . [a]rising out of "business" pursuits of an "insured."

This exclusion does not apply to activities which are usual to non-"business" pursuits. The trial court found that the negligent conduct arose out of Wagner's business pursuit and therefore concluded that defendant was not obligated to indemnify plaintiff.

█ As noted above, Wagner was paid $300 for his services on the night of September 4; he used business cards for "Music Unlimited"; and he declared income from his disc jockey work on his tax returns. Wagner was plainly engaged in the business of being a disc jockey at the wedding. Judy Luneau was injured by one of his speakers, which the court found had been negligently stacked. All of these facts indicate that Wagner's activities fall into the business-pursuits exclusion. We must, therefore, decide whether Wagner's activities at the wedding were "usual to nonbusiness pursuits."

## C.

The distinction between the business pursuits exclusion and the exception for activities usual to nonbusiness pursuits is best addressed in the cases in which the tortfeasor is a day-care provider. The early leading case finding coverage is *Gulf Insurance Co. v. Tilley*, 280 F. Supp. 60 (N.D. Ind. 1967), *aff'd*, 393 F.2d 119 (7th Cir. 1968), a case cited in *Vermont Mutual Insurance Co. v. Gambell*, 166 Vt. 595, 596, 689 A.2d 453, 454 (1997) (mem.). In *Tilley*, the plaintiff, a child, was injured when she pulled a coffee pot down on herself, and she sued the home day-care provider, who had used the pot to prepare coffee for herself and a friend. Defendant's homeowner's insurance carrier denied coverage under the business pursuits exclusion, but the court found the case fit within the exception for activities that are usual to nonbusiness pursuits. The court reasoned that "preparation of hot coffee is an activity that is not ordinarily associated with a babysitter's functions." *Tilley*, 280 F. Supp. at 65.

Most later cases involving day-care providers have rejected the analysis of *Tilley*. The leading case is *Stanley v. American Fire & Casualty Co.*, 361 So. 2d 1030 (Ala. 1978), in which the child was injured when she fell into the day-care home's fireplace while the provider was preparing lunch for herself, her child and other children in day care. In reaching its conclusion that the case fell within the business pursuits exclusion of the homeowner policy, but not within

the exception for activities that are usual to nonbusiness pursuits, the court rejected the *Tilley* analysis:

> In *Tilley,* the exclusionary clause was held inoperative where baby care was furnished for consideration, and the baby sustained burns when she overturned a coffee percolator. The district trial court assumed that the child care was a business pursuit, but characterized insured's coffee brewing for herself and a guest as an activity not connected with baby care, thus ordinarily incident to non-business pursuits. This analysis is questionable. The baby was burned because of the condition on the premises, and the baby's own activity. The business of child care contemplates the exercising of due care to safeguard a child of tender years from household conditions and activities; and, any activity of the insured in this regard from which injury results cannot logically be called an activity ordinarily incidental to a non-business pursuit. In other words, the activity referred to is failure to supervise rather than making coffee for a third party.

*Id.* at 1032. The court recognized that "the exclusionary provision is poorly worded and could have been written with more specificity," *id.* at 1033, but concluded that the relevant activity for purposes of the insurance policy language was "not preparing lunch, which would ordinarily be incident to a non-business pursuit, but rather to the failure to properly supervise a young child." *Id.*

The majority of cases since *Stanley* have followed its reasoning and rejected an approach that looks narrowly at the activity in which the insured was engaged when the tort occurred. See, e.g., *United States Fidelity & Guaranty Co. v. Heltsley,* 733 F. Supp. 1418, 1422-23 (D. Kan. 1990); *Moncivais v. Farm Bureau Mut. Ins. Co.,* 430 N.W.2d 438, 442 (Iowa 1988); *American Family Mut. Ins. Co. v. Moore,* 912 S.W.2d 531, 535-36 (W.D. Mo. 1995); *Rocky Mountain Cas. Co. v. St. Martin,* 802 P.2d 144, 147 (Wash. Ct. App. 1990).

In addition to the logic of *Stanley,* there are three major reasons to adopt this approach. First, it directly relates the coverage issue to the theory of liability. Second, and related, it avoids artificial and arbitrary distinctions that have nothing to do with the nature of the risk involved. In the day-care context, it makes little sense to find coverage when a child pulls down a hot pot that is making soup for the children, but no coverage if the pot is making coffee for the day-care staff. Indeed, narrow distinctions tend to eat up the business pursuits

exception because tortious conduct, viewed in isolation from its context, rarely advances a business interest and can easily be categorized as ordinarily incident to nonbusiness pursuits.

This leads to the third, and most important, reason why we adopt the *Stanley* approach. We are construing a homeowner's policy "designed to insure primarily within the personal sphere of the policyholder's life and to exclude coverage for hazards associated with regular income-producing activities . . . [which] involve different legal duties and a greater risk of injury or property damage to third parties than personal pursuits." Frazier, *The Business-Pursuits Exclusion Revisited*, 1977 Ins. L.J. 88, 89. Business persons can obtain business liability insurance. It is unreasonable to assume that the parties to the homeowner's policy contemplated that the courts would divide up the activities of an insured so a business tort somehow is covered even when "the personal sphere of the policyholder's life" is not involved. See *State Farm Mut. Auto. Ins. Co. v. Roberts*, 166 Vt. 452, 461, 697 A.2d 667, 672 (1997) (reasonable expectation of parties is important in determining scope of coverage). It is undesirable to force homeowners' policy premiums to rise to cover a major part of the business tort risk of those homeowners who conduct a business in or out of the home but choose not to purchase insurance to cover their business.

In this case, it is particularly significant that the injury to plaintiff resulted from a "scuffle" between the disc jockey and a wedding guest who became angry because the disc jockey failed to play a song requested by the guest. If the scuffling guest were the plaintiff, the exception for "activities which are usual to nonbusiness pursuits" would apply. See *Farmers Ins. Exchange v. Sipple*, 255 N.W.2d 373, 375 (Minn. 1977). Even though the disc jockey is on duty and playing music, engaging in a physical fight is a nonbusiness activity.

But in this case plaintiff is a bystander who was hit by a speaker knocked over by the scuffling parties. She does not allege that she is the victim of an intentional tort, although that theory probably better fits the facts, presumably because such an allegation would run into an insurance policy exclusion for intentional torts. Instead, she alleges negligence in placing the speaker in such a way that it could easily be knocked over and negligence in knocking it over. It matters little to her how the speaker was knocked over as long as Wagner was somehow at fault for the act.

Plaintiff asks us to view the insurance policy exception as if she were the scuffling wedding guest, but her liability theory is based on

the disc jockey's duty to conduct his business activities safely so as not to injure a patron. This is the basic incongruity in plaintiff's position; to make the insurance company liable, the fight is viewed as an activity usual to nonbusiness pursuits, but the very idea that Wagner was negligent is predicated on his business-related duty to maintain a safe space for his customers.

■ Applying the *Stanley* approach to the facts before us, we affirm the superior court decision that this case fits within the exclusion for business pursuits, and not the exception to that exclusion. As discussed above, plaintiff's liability theory is that the insured must conduct his disc jockey business in a manner that is safe for those invitees who dance to his music.[3] It makes no difference to this theory whether the disc jockey knocks over a dangerously placed speaker because he is fighting with another guest, or because he negligently bumps into it while trying to retrieve a fallen record, just as it should make no difference in the day care context whether the child pulls down hot soup for the child or the owner's hot coffee. In either case, the tortious conduct that results in the falling speaker cannot be said to be incident to a nonbusiness pursuit.

## II.

■ Plaintiff also argued that the fight and the placement of the speakers were concurrent causes of her injuries, such that coverage should result. The doctrine of concurrent causation, however, requires two independent risks, one of which is excluded by the policy and one of which is included. See, e.g., *State Farm Mut. Auto. Ins. Co. v. Roberts*, 166 Vt. at 456, 667 A.2d at 669. Here, both risks are excluded by the homeowner's policy. Plaintiff concedes that Wagner's negligence in stacking the speakers is excluded because it was a business pursuit, and we have just determined that Wagner's negligence in knocking over the speaker was a failure to maintain a safe space for

---

[3] Affirmance in this case is consistent with the recent memorandum decision in *Vermont Mutual Insurance Co. v. Gambell*, 166 Vt. 595, 689 A.2d 453 (1997), in which the plaintiff was injured while delivering a dog to defendants' home when she slipped and fell on an icy driveway after being jumped on by three unleashed dogs. Although defendants ran a dog kennel business, there was no evidence that the dogs that jumped on plaintiff were connected with the kennel operation, and plaintiff had not reached the business premises. We agree with a recent decision of the Hawaii Court of Appeals, *Armed Forces Insurance Exchange v. Transamerica Insurance Co.*, 966 P.2d 1099, 1109 (Haw. Ct. App. 1998), that central to the outcome of *Gambell* is the fact that the insurance company could not show that the instrumentality of the harm, the dogs, were in any way related to defendants' business.

his customers, at least with regard to plaintiff. Where both risks causing the injury were related to Wagner's business, and are therefore excluded by the policy, there can be no application of concurrent causation.

*Affirmed.*