2009 VT 83

**NORTHERN SECURITY INSURANCE COMPANY v. Donald ROSENTHAL, Martha Rosenthal and Theresa (Teta) Hilsdon**

[980 A.2d 805]

No. 08-506

¶ 1. August 4, 2009. Theresa Hilsdon appeals from a summary judgment ruling against her in a coverage action brought by the homeowners' insurance carrier of Donald and Martha Rosenthal, who own a home where Hilsdon was injured. The trial court concluded that coverage was barred by a "business pursuits" exclusion in the policy. We agree and affirm.

¶ 2. The insureds, the Rosenthals, ran a business providing weekend-long rela-

tionship counseling retreats for couples at their home in Corinth, Vermont. The cost of the retreats included meals. When Hilsdon, a paying participant in one such retreat, fell through an open, unguarded trapdoor in the dining room of the home during breakfast, she was severely injured. Hilsdon sued the Rosenthals, alleging negligence, and they sought a defense and indemnity under a homeowners' policy they had purchased from Northern Security Insurance Company (NSIC). NSIC agreed to provide a defense pursuant to a nonwaiver agreement. The Rosenthals eventually settled with Hilsdon for $475,000 without NSIC's knowledge or consent. By the settlement agreement, the Rosenthals purported to assign their rights under the policy to Hilsdon, and Hilsdon agreed not to seek recovery from the Rosenthals directly.

¶ 3. Before Hilsdon and the Rosenthals settled the tort suit, NSIC had commenced this declaratory judgment action, seeking a judicial declaration that the Rosenthals were not entitled to coverage for the trapdoor incident under their homeowners' policy due to an exclusion barring coverage for damages "[a]rising out of 'business' pursuits of an 'insured.'" Hilsdon urged the trial court to conclude that there was coverage, based in large part upon an exception to the exclusion for "activities which are usual to non-'business' pursuits." The court agreed with NSIC, concluding that Hilsdon was at the Rosenthals' home "only as a business invitee, not as a friend," and that therefore the Rosenthals owed Hilsdon a duty to maintain a safe business premises. Breaches of that duty, the trial court held, result in damages that are not covered by the standard homeowners' policy the Rosenthals purchased.

¶ 4. We review the grant of summary judgment under the same standard as the trial court. *DeBartolo v. Underwriters at Lloyd's of London*, 2007 VT 31, ¶ 8, 181 Vt. 609, 925 A.2d 1018 (mem.). "If both parties seek summary judgment, each must be given the benefit of all reasonable doubts and inferences when the opposing party's motion is being evaluated." *Id.* The court's determination that there was no coverage presents a mixed question of fact and law: (1) a factual determination concerning the nature of the conduct giving rise to the liability; and (2) a legal conclusion as to whether the conduct falls within the business-pursuits exclusion. See *Luneau v. Peerless Ins. Co.*, 170 Vt. 442, 445, 750 A.2d 1031, 1033 (2000).

¶ 5. We begin by setting out the provisions of the homeowners' policy that are relevant to this appeal. The policy provides coverage for personal liability up to $500,000 for each occurrence, for legal defense costs, and for medical payments to others of up to $1,000 per occurrence. No coverage is available, however, for "bodily injury" or "property damage"

> Arising out of "business" pursuits of an "insured".
>
> This exclusion does not apply to activities which are usual to non-"business" pursuits.
>
> However, when Home Business Endorsement VT-BIZ is attached to the policy, this Exclusion b. does not apply to the scheduled "business" covered under the Home Business Endorsement.

The Rosenthals' policy did not have a Home Business Endorsement.

¶ 6. There is no dispute here that the "business pursuits" exclusion applies, and that coverage will be available only if the damages arose from "activities which are usual to nonbusiness pursuits" and thus find coverage under the exception to the exclusion. The question of whether a particular activity falls within the exception is "obviously . . . context-specific," although "we have also identified certain

factors relevant to distinguishing business from nonbusiness pursuits." *Towns v. N. Sec. Ins. Co.*, 2008 VT 98, ¶ 10, 184 Vt. 322, 964 A.2d 1150. The relevant factors referenced in *Towns* are set out in our prior cases in this area, which we briefly recount.

¶ 7. Where the acts or omissions causing injury did not "contribute to or further the interest of the insured's business" and were not "directly related to that business," in *Gambell*, we found that there was coverage. *Vt. Mut. Ins. Co. v. Gambell*, 166 Vt. 595, 596, 689 A.2d 453, 454 (1997) (mem.).

¶ 8. Our approach in *Luneau* was the same. There, a disc jockey was "plainly engaged in the business of being a disc jockey" at a wedding, when a wedding guest was injured by a falling speaker the disc jockey had set up. *Luneau*, 170 Vt. at 446, 750 A.2d at 1034. In analyzing whether the guest's injuries were covered by the disc jockey's homeowner's policy, we adopted the approach taken by the Alabama Supreme Court in *Stanley v. American Fire & Casualty Co.*, 361 So. 2d 1030 (Ala. 1978). The *Stanley* court rejected an earlier approach, in which courts had taken a narrow view of the insured's activity at the time of the injury, and which had resulted in judicial decisions that tended "to eat up the business pursuits exception because tortious conduct, viewed in isolation from its context, rarely advances a business interest and can easily be categorized as ordinarily incident to nonbusiness pursuits." *Luneau*, 170 Vt. at 447-48, 750 A.2d at 1035. Instead, as we noted in *Luneau*, the *Stanley* court took the view that the relevant "activity" was not simply whatever the insured was doing at the time, but rather whatever it was that gave rise to the liability. *Id.* at 447, 750 A.2d at 1034-35 (citing *Stanley*, 361 So. 2d at 1032). Thus, in *Luneau*, the relevant activity was not "playing music" but rather providing a safe space for a disc jockey's patrons to

dance in. This approach was founded on our desire to directly relate coverage to the theory of liability, to avoid "artificial and arbitrary distinctions that have nothing to do with the nature of the risk involved," and in our recognition that the *Stanley* approach was better able to give effect to the reasonable expectations of the parties to a standard homeowners' insurance contract that is not intended to cover "hazards associated with regular income-producing activities . . . [which] involve different legal duties and a greater risk of injury or property damage to third parties than personal pursuits." *Id.* at 447-48, 750 A.2d at 1035 (quotation omitted).

¶ 9. Thus, in *Towns*, where the insured's disposal of business-related trash as fill on his property saved him no money and served no business purpose, there was coverage. 2008 VT 98, ¶ 12.[1] There, we noted that activities that arise out of a business pursuit may nevertheless be covered if they are "not designed to further the interests of the business." *Id.*

¶ 10. Hilsdon asserts on appeal that the "unguarded condition of the trap door, and Mrs. Rosenthal's failure to close the door when she went into the basement to do laundry, are not 'directly related' to their counseling enterprise." Thus, according to Hilsdon, the basis for her tort claim was "the condition of the premises" and not any hazard peculiar to business invitees or the business itself. We disagree.

¶ 11. Hilsdon seeks, in her briefing and at oral argument, to define the "business activity" narrowly, as "the seminar," and asserts that at the time of the breakfast

---

[1] The issue that divided this Court in *Towns* — whether it was a "business pursuit" for a trash hauler to divert large amounts of fill to his home for disposal during a time when disposal at a landfill cost nothing — has no analogue in the instant case.

the business activity had not yet begun. She further asserts that "doing laundry" is a nonbusiness activity. But this narrow characterization, in addition to running counter to the broad, context-based holding in *Luneau*, ignores the undisputed fact that the insured here was doing laundry *for a business purpose*. Further, the presence of Hilsdon and the other retreat customers in the dining room was entirely attributable to the Rosenthals' business enterprise, in which they accepted payment for a weekend "package" that included both "the seminar" *and* room and board.[2] Thus, even taking the facts in the light most favorable to Hilsdon, we cannot agree with her characterization of the record.

¶ 12. As we noted in *Luneau*, the "most important" reason we adopted the *Stanley* approach is that "[w]e are construing a homeowner's policy designed to insure primarily within the personal sphere of the policyholder's life and to exclude coverage for hazards associated with regular income-producing activies . . . [which] involve different legal duties and a greater risk of injury . . . than personal pursuits." 170 Vt. at 448, 750 A.2d at 1035 (quotations omitted). See also, e.g., *Nationwide Mut. Fire Ins. Co. v. Nunn*, 442 S.E.2d 340, 344 (N.C. Ct. App. 1994) (noting that "[w]hen homeowners change the use of their premises from residential to commercial, they incur a significant increase in the

___

[2] Hilsdon would have us find coverage based on the fact that she did not herself sleep in the Rosenthals' home during the retreat, but this is a distinction without a difference. The critical point is that Hilsdon had paid the Rosenthals for the privilege of eating breakfast in their home. Where Ms. Hilsdon bedded down is irrelevant, as is the location of the seminar itself; the pertinent fact is that Hilsdon was a paying breakfast guest at the time of the injury.

risk of tort claims due to the increased public traffic on the premises," and thus "should seek an appropriate type of coverage"); *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 645 (Tex. 2005).

¶ 13. The reasonable expectation of the parties is, of course, central to interpreting any contract, and contracts of insurance are no exception. *State Farm Mut. Auto. Ins. Co. v. Roberts*, 166 Vt. 452, 461, 697 A.2d 667, 672 (1997). Here, both the increased risk and the parties' reasonable expectations are highlighted by the provision noting that the business-pursuits exclusion will not apply if the insured has purchased a home business endorsement for their homeowners' policy. See *Am. Fam. Mut. Ins. Co. v. Elliot*, 523 N.W.2d 100, 103 (S.D. 1994) (availability of additional coverage for business pursuits buttresses finding of no coverage for injuries arising from home day care).

¶ 14. As in *Luneau*, where the "plaintiff's liability theory [was] that the insured must conduct his disc jockey business in a manner that is safe for those invitees who dance to his music," 170 Vt. at 449, 750 A.2d at 1036, here Hilsdon's liability theory is essentially that the Rosenthals failed to conduct their retreat business in a manner that was safe for those invitees who eat breakfast at the Rosenthal home, as Hilsdon did. See also *Garafano v. Neshobe Beach Club, Inc.*, 126 Vt. 566, 572, 238 A.2d 70, 75 (1967) (noting that owner of business was "bound to use reasonable care to keep its premises in a safe and suitable condition so that plaintiff would not be unnecessarily or unreasonably exposed to danger").

¶ 15. We took pains in *Luneau* to clarify that our decision was consistent with our then-recent memorandum decision in *Gambell*, upon which Hilsdon relies heavily today. We noted that *Gambell* was premised on the fact that there "was no evidence that the dogs that jumped on [the] plaintiff were connected with the [insureds'] kennel operation, and [the]

plaintiff had not reached the business premises." 170 Vt. at 449 n.3, 750 A.2d at 1036 n.3. Thus, the insurance company in *Gambell* "could not show that the instrumentality of the harm, the dogs, were in any way related to [the insureds'] business." *Id.* The connection of the harm Hilsdon suffered and the Rosenthals' business activities is much more direct here.

¶ 16. The business activities being conducted at the time of Hilsdon's injury were (1) serving a breakfast buffet to approximately ten paying clients, and (2) retrieving business-related laundry from the basement via the trapdoor.[3] Hilsdon was injured when, en route from buffet to table, she fell into the open trapdoor. As in *Luneau*, there is no coverage here because the injuries arose directly out of the Rosenthals' "duty to conduct [their] business activities safely." 170 Vt. at 448-49, 750 A.2d at 1036. Hilsdon's argument that "the condition of the Rosenthal premises, including the open trap door, was 'usual to . . . non-business pursuits' " is unconvincing. If we were to adopt that logic, the business pursuits exclusion would seem to have no effect at all in any home-business case involving the condition of the premises. This would greatly alter, in our view, the scope of the coverage that the parties to a homeowners' policy bargain for. Where, as here, "the personal sphere of the policyholder's life is not involved" in any way, we continue to adhere to the view, which we expressed in *Luneau*, that it is unreasonable to assume

that the parties expected a standard homeowners' policy to provide coverage. *Luneau*, 170 Vt. at 448, 750 A.2d at 1035.

¶ 17. Hilsdon's condition-of-the-premises theory would cause the exception to swallow the exclusion, and would result in coverage for a broad array of business-related risks under standard homeowners' policies. This is just the result we rejected in *Luneau* when we adopted the broader, context-based approach in *Stanley*. *Luneau*, 170 Vt. at 447-48, 750 A.2d at 1034-35. See also *Thoele v. Aetna Cas. & Sur.*, 39 F.3d 724, 730 (7th Cir. 1994) (noting that, under Illinois law, "even mundane things occurring within a home . . . can be excluded from coverage when they happen for a business reason").

¶ 18. While people routinely do laundry for noncommercial purposes, when an insured does laundry for a *purely* commercial purpose and does so in a negligent manner, the resultant injuries will not find coverage in the standard homeowners' policy. Likewise, when the Rosenthals undertook to provide breakfast in their home for a dozen guests, the relevant activity was that wholly commercial undertaking — and the provision of a safe premises therefor — and not simply "eating breakfast."

¶ 19. Having concluded that the Rosenthals' policy provides no coverage for Hilsdon's injuries, we have no occasion to consider the enforceability of the settlement between the Rosenthals and Hilsdon. There being no duty to indemnify, NSIC has no obligation to pay the settlement amount.

*Affirmed.*

---

[3] Hilsdon contends that the breakfast was not a business activity for several reasons, none of which we find convincing. In any event, there was no dispute in the trial court that the "business pursuits" exclusion applied, and therefore the only question we consider on appeal is whether coverage is available because the damages were caused by activities "usual to non-'business' pursuits."