519 S.E.2d 640

ESTATE OF Janet Leigh HOUGH By and Through Its Personal Representative, James "Bucky" LEMASTER, Plaintiff Below, Appellant,

v.

The ESTATE OF William HOUGH By and Through Its Personal Representative, the BERKELEY COUNTY SHERIFF, and John B. Myrick, Defendants Below, Appellees.

No. 25145.

Supreme Court of Appeals of West Virginia.

Submitted March 9, 1999.

Decided June 18, 1999.

Laura R. Rose, Esq., Mary Binns–Davis, Esq., Laura Rose & Associates, Martinsburg, West Virginia, Attorneys for Plaintiff Below, Appellant.

Ancil G. Ramey, Esq., Lucien G. Lewin, Esq., Steptoe & Johnson, Martinsburg, West Virginia, Attorneys for Myrick.

PER CURIAM:

The appellant and plaintiff below, James Bucky LeMaster, acting as the Personal Representative of the Estate of Janet Leigh Hough, appeals from the September 9, 1997 order of the Circuit Court of Berkeley County which dismissed his wrongful death action against appellee and defendant below, John B. Myrick. On appeal, the appellant contends that the circuit court erred in granting

the appellee's motion to dismiss. For the reasons that follow, we find the circuit court's ruling to be erroneous. Accordingly, we reverse and remand this case for further proceedings consistent with this opinion.

## I.

### FACTS

On July 21, 1994, Janet Hough obtained a Family Violence Protective Order against her husband, William Hough, after an incident in which Mr. Hough allegedly physically abused and threatened Mrs. Hough and one of the couple's two children.[1] The order granted to Mrs. Hough and the two children the exclusive possession of the couple's mobile home. Shortly thereafter, Mr. Hough moved into a mobile home directly across the road from the family residence.

On August 7, 1994, while mowing the lawn surrounding her mobile home, Mrs. Hough was shot twice by her husband, who immediately took his own life. Mrs. Hough died as a result of her gunshot wounds.

On August 8, 1996,[2] James Bucky LeMaster, acting as the Personal Representative of the Estate of Janet Leigh Hough, filed a wrongful death action against the appellee, John B. Myrick, the owner of the mobile home park in which Mr. and Mrs. Hough resided at the time the protective order was issued against Mr. Hough.[3] The complaint alleges, *inter alia*, the following: the appellee is related to Mr. Hough and should have known about the protective order when he rented the mobile home located across the road from the family residence to Mr. Hough; the appellee failed to take any action after Mrs. Hough informed him that she was

terrified of her husband and was concerned for her safety and the safety of her children; and as a result of her fear of her husband, Mrs. Hough refrained from mowing the lawn directly in front of her mobile home until the appellee advised her to either mow the lawn or move from the premises. The complaint states further:

24. Defendant Myrick was negligent as a landlord and as an individual in consciously and knowingly subjecting Janet Hough to a high degree of risk of harm or death in one or more of the following ways:

a. Agreeing to place William Hough in a mobile home directly across the street from the mobile home being occupied by Janet Hough and her minor children in the face of a Family Violence Temporary Protective Order dated July 18, 1994;

b. Failing to establish any safeguards or restrictions upon William Hough in allowing him to stay in the mobile home directly across the street from that mobile home in which Janet Hough and her minor children were residing, to include but not be limited to, an inspection of the premises to see that there were no firearms, liquor or other alcoholic beverages given that Defendant Myrick knew or should have known that William Hough abused alcohol and became very violent during his alcohol use;

c. Failing to provide alternative housing for Janet Hough and her minor children in much the same way that he did for William Hough in order to protect their safety in the face of the Family Violence Temporary Protective Order;

d. Instructing Janet Hough to mow the lawn in front of her trailer which clearly

---

1. The protective order was entered pursuant to W.Va.Code § 48–2A–6 (1994). The order granted to Mrs. Hough the temporary possession of the family's mobile home; provided that Mr. Hough was to refrain from entering any school, business, or place of employment for the purpose of violating the order; provided that Mr. Hough was to refrain from contacting, telephoning, communicating, harassing, or verbally abusing Mrs. Hough in any public place; and ordered Mr. Hough to pay court costs. The order was to be effective for a period of 90 days.

 According to the appellant's complaint filed below, Mr. Hough had a history of physically and

mentally abusing and assaulting Mrs. Hough, requiring her to seek emergency medical care and treatment on more than one occasion. It also alleges that Mr. Hough suffered from alcoholism.

2. According to the appellant, August 7, 1996 was a "nonjudicial day."

3. The wrongful death action also included as defendant the Estate of William Hough By and Through Its Personal Representative, the Berkeley County Sheriff.

put her in a position of danger and increased risk of harm given that William Hough was residing directly across the street from her; and

e. Such other and further acts and omissions as shall become evident through the course of this civil action.

25. As a direct and proximate result of the negligent, willful and wanton misconduct of Defendant Myrick, the Plaintiff sustained and incurred damages[.]

The summons and complaint were not served on the appellee until June 24, 1997. On July 2, 1997, the appellee moved to dismiss on the grounds that the summons and complaint were not served within 180 days as required by *W.Va.R.Civ.P.* 4(*l*) and the complaint failed to state a claim upon which relief may be granted.[4]

By order of September 9, 1997, the Circuit Court of Berkeley County granted the appellee's motion to dismiss on both grounds. The circuit court made the following conclusions of law:

1. Rule 4(*l*) of the West Virginia Rules of Civil Procedure provides that

if service of the summons and complaint is not made upon a defendant within one hundred and eighty (180) days after the filing of the complaint, the court, upon motion or its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be affected within a specified time . . .

2. The Plaintiff failed to serve the moving Defendant within the time period set forth above.

3. Plaintiff has failed to show good cause for not having effected service of the summons and a copy of the complaint within one hundred eighty (180) days.

4. Under the common law of torts, neither a neither [sic] a person nor specifically a landlord has a duty to protect others or tenants from the criminal activity of

third parties and no circumstances have been plead which give rise to any such duty of any kind.

The appellant now appeals this order.

## II.

## STANDARD OF REVIEW

■ This Court has stated that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick,* 194 W.Va. 770, 461 S.E.2d 516 (1995). With this in mind, we now proceed to discuss the issues before us.

## III.

## DISCUSSION

*Issue 1: Failure to timely serve the summons and complaint*

■ The first issue is whether the circuit court was correct in finding that the appellant failed to show good cause for not having effected service of the summons and complaint within 180 days. According to *W.Va.R.Civ.P.* 4(*l*), in effect during the events at issue[5]:

If service of the summons and complaint is not made upon a defendant within 180 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

In Syllabus Point 2 of *State ex rel. Charleston Med. v. Kaufman,* 197 W.Va. 282, 475 S.E.2d 374 (1996), we explained:

Dismissal under Rule 4(*l*) of the West Virginia Rules of Civil Procedure is mandatory in a case in which good cause for the lack of service is not shown, and a

---

**4.** *W.Va.R.Civ.P.* 12(b)(6), effective September 1, 1994 to April 6, 1998, provided that the defense of failure to state a claim upon which relief can be granted at the option of the pleader may be made by motion. This rule was amended effective April 6, 1998.

**5.** *W.Va.R.Civ.P.* 4(*l*) stated above was in effect from January 1, 1995 to April 6, 1998. This rule was amended effective October 26, 1998.

plaintiff whose case is subject to dismissal for noncompliance with Rule 4(*l*) has two options to avoid the consequence of the dismissal: (1) To timely show good cause for not having effected service of the summons and complaint, or (2) to refile the action before any time defenses arise and timely effect service under the new complaint.

■ The appellant contends that good cause exists in this case. In support of this argument, the appellant states in his memorandum of law in opposition to the motion to dismiss below, and in his brief and argument before this Court, that efforts were made to timely serve the appellee. According to the appellant, the correct address of the appellee was not initially known. The appellant's attorney hired a private investigator who, in the Fall of 1996, attempted on three separate occasions to deliver the summons and complaint to an incorrect address and also made inquiries in the surrounding neighborhood of that address. When this failed, the investigator searched county records, finally tracing the appellee to a girlfriend's house. Between April 29, 1997 and June 7, 1997, the investigator made twelve attempts to serve the appellee at his girlfriend's house, finally succeeding on June 24, 1997. The appellant concludes that these efforts constitute due diligence.[6]

The appellee responds that the circuit court properly ruled that good cause does not exist here. According to the appellee, the process server made only three actual attempts at service in the eight month period following the filing of the action, and that no attempt at service was made between October 1996 and April 29, 1997. Also, if the summons contained the wrong address, this is the fault of the appellant's counsel who prepared the summons. In addition, the appellee was a continuous resident of Berkeley County both before and after the filing of the action and even owned a mobile home park in Berkeley County. Finally, there is no allegation that the appellee attempted to evade service of process or was aware of the existence of the lawsuit.

This Court has had previous occasion to visit the issue of what constitutes good cause under *W.Va.R.Civ.P.* 4(*l*). In *State ex rel. Charleston Med. v. Kaufman, supra,* this Court considered the dismissal of an action under Rule 4(*l*) for a 370–day delay in service of process. In that case, the trial court had reinstated the action, but we prohibited further proceedings "unless the plaintiff ... is properly found [by the circuit court] to have shown good cause under Rule 4(*l*) why the action should not be dismissed." *State ex rel. Charleston Med.,* 197 W.Va. at 290, 475 S.E.2d at 382. We noted that "good cause must be substantial and not just a ruse," 197 W.Va. at 287, 475 S.E.2d at 379, and stated that "by and large, courts have not considered that ongoing settlement negotiations excuse compliance with Rule 4(*l*)." 197 W.Va. at 288, 475 S.E.2d at 380 (citations omitted). Also, "mere inadvertence, neglect, misunderstanding, or *ignorance of the rule* or its burden do not constitute good cause under Rule 4(*l*)." 197 W.Va. at 289, 475 S.E.2d at 381 (citation omitted). We also enumerated several factors to consider in determining good cause under Rule 4(*l*). Utilizing the guidance of the Illinois court in *North Cicero Dodge, Inc. v. Victoria Feed Co.,* 151 Ill.App.3d 860, 105 Ill.Dec. 28, 503 N.E.2d 868 (1987), we listed the following considerations: (1) length of time to obtain service; (2) activity of plaintiff; (3) plaintiff's knowledge of defendant's location; (4) ease with which location could have been known; (5) actual knowledge by defendant of the action; and (6) special circumstances. 197 W.Va. at 288, 475 S.E.2d at 380.

In *Davis v. Kidd,* 198 W.Va. 205, 479 S.E.2d 866 (1996) (per curiam), the circuit court granted the defendant's motion to dismiss where the defendant was served with process 490 days after the filing of the complaint. The plaintiffs argued that they established good cause by showing (1) that they had a change of counsel after the complaint was filed, (2) that they pursued settlement

---

**6.** The appellant also argues that service was properly made after his claim was refiled pursuant to W.Va.Code § 55–2–18 (1985), commonly known as the "savings clause." Because we dispose of this issue on the appellant's first contention summarized above, we decline to address the appellant's second argument on this issue.

negotiations with the defendant's insurance carrier during the period of delay, (3) the plaintiffs hired a private investigator who ultimately determined the defendant's whereabouts, and (4) the defendant was not prejudiced by the delay of service. We found, however, that the facts set forth in the record supported the circuit court's order and explained:

> In particular, the complaint filed by the appellants indicated that the appellee was a nonresident living in Woodsfield, Ohio, and, as the circuit court found, there was no allegation that the appellee attempted to avoid service of process. In addition, a letter dated April 23, 1993, from the appellants' original counsel to State Farm during settlement negotiations acknowledged that the appellee had not been served with process. The delay following that letter continued well into 1994. The service of process upon the appellee on April 28, 1994, took place some 490 days after the filing of the complaint.

*Davis v. Kidd,* 198 W.Va. 205, 209–210, 479 S.E.2d 866, 870–871. We concluded, "[h]ere, the facts concerning the delay in service of process were thoroughly expiscated or 'fished out' by the circuit court. The circuit court's memorandum of opinion is well-reasoned." 198 W.Va. at 210, 479 S.E.2d at 871 (citation omitted). Accordingly, we affirmed the circuit court.

*Childress v. Thompson,* 200 W.Va. 342, 489 S.E.2d 499 (1997) (per curiam) concerned the dismissal of a suit for failure to show good cause for untimely service of process where a fifteen month period elapsed between the filing of the suit and the service. of process. The plaintiff had placed phone calls in an attempt to locate the defendant and attempted to obtain information from the defendant's insurer. Also, the plaintiff contended that her counsel's illness affected her ability to serve process. We noted that the circuit court examined this last contention "and determined that the illness did not constitute good cause for the delay. The court reasoned that Appellant's counsel was not a sole practitioner, and the illness did not prevent the hiring of other professionals to attempt to locate the Appellee." 200 W.Va. at 345,

489 S.E.2d at 502. We affirmed the circuit court.

In the instant case, the complaint was filed on August 8, 1996 and the summons and complaint were served on the appellee on June 14, 1997, just over ten months or about 312 days later. This is a considerably shorter time than the 370 days in *State ex rel. Charleston Med.,* the 490 days in *Davis* and the fifteen months in *Childress.* Of course, as noted above, it is necessary to consider the plaintiff's activity during this ten month period. Here, it appears that the appellant's counsel made a reasonably diligent effort to serve process on the appellee. Appellant's counsel hired a private investigator who made three attempts, in the Fall of 1996, to deliver the summons and complaint and made various inquiries in the neighborhood of the incorrect address. Although the investigator made no actual attempts at service between October 1996 and April 29, 1997, he apparently continued his efforts during this period, via a search of county records, to locate the appellee. The investigator ultimately traced the appellee to the house of a girlfriend and made twelve attempts to serve the appellee there between April 29, 1997 and June 7, 1997 before finally succeeding.

As noted by the appellee, he owned a mobile home park in Berkeley County, and there is no allegation that the appellee attempted to evade service of process or was aware of the existence of the lawsuit. Nevertheless, we are persuaded by the fact that appellant's counsel hired a private investigator to find the appellee not long after the complaint was filed. This is in contrast to *Davis* where the help of an investigator was not enlisted until after the 180–day period had expired. The investigator made several efforts over the span of several months to locate the appellee. In addition, although the appellant knew that the appellee owned a mobile home park in Berkeley County, this knowledge obviously was not helpful in finding the appellee's place of residence. Further, the fact that the appellee was residing with a friend and not in his own residence or the residence of a family member who shares his last name made his whereabouts more difficult to trace. In sum, these factors, tak-

en together, show more than just a ruse. We believe they show good cause for the appellant's failure to effect timely service of the summons and complaint. Accordingly, we reverse the circuit court's dismissal of the appellant's case based on the failure to serve the summons and complaint within 180 days.

### Issue 2: Failure to state a claim upon which relief can be granted

The second issue is whether it was error for the circuit court to dismiss the appellant's complaint for failure to state a claim upon which relief can be granted. As noted above, in dismissing the complaint for failure to state a claim, the circuit court found, as a matter of law, that "neither a person nor specifically a landlord has a duty to protect others or tenants from the criminal activity of third parties and no circumstances have been plead which give rise to any such duty of any kind."

■■■ We have instructed circuit courts, when deciding a motion to dismiss under Rule 12(b)(6), to "constru[e] the factual allegations in the light most favorable to the plaintiffs." *Murphy v. Smallridge*, 196 W.Va. 35, 36, 468 S.E.2d 167, 168 (1996) (citation omitted). Also, "[d]ismissal for failure to state a claim is proper where 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* (Citation omitted). Further, Rule 12(b)(6) motions to dismiss are governed by "the liberal policy of the rules of pleading with regard to the construction of plaintiff's complaint[ ] and ... the policy of the rules favoring the determination of actions on the merits." *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W.Va. 603, 606, 245 S.E.2d 157, 159 (1978). Finally, we have stated that "the motion to dismiss for failure to state a claim should be viewed with disfavor and rarely granted." *Id.*

The appellant contends that he stated a valid claim against the appellee, and he essentially relies on two theories to support his proposition that the appellee did have a duty to protect Mrs. Hough. First, the appellant argues that all the essential elements of a negligence claim are present here, *i.e.*, the appellee knowingly subjected Mrs. Hough to a high degree of risk of harm, and he knew or should have known of Mr. Hough's violent tendencies. In advancing this theory, the appellant depends on this Court's holding in *Courtney v. Courtney*, 186 W.Va. 597, 413 S.E.2d 418 (1991) where we determined that the complaint stated a claim for accomplice liability where the defendant, who had knowledge of her son's violent tendencies when under the influence of controlled substances, supplied her son with controlled substances, and he subsequently physically abused the plaintiff, his ex-wife.

The second theory relied upon by the appellant is one articulated by this Court in *Miller v. Whitworth*, 193 W.Va. 262, 455 S.E.2d 821 (1995) where we stated that a landlord has a duty to protect a tenant from the criminal activity of a third party if the landlord's affirmative actions or omissions unreasonably created or increased the risk of injury to the tenant from the criminal activity of a third party. The appellant avers that such a duty exists here because the appellee should have known of Mr. Hough's violent actions toward Mrs. Hough and realized the risk of harm he created by permitting Mr. Hough to live across the street from Mrs. Hough.

The appellee counters that the complaint was properly dismissed because he owed Mrs. Hough no duty of care, and the acts of Mr. Hough were not foreseeable. The appellee emphasizes our holding in *Miller, supra.* that a landlord does not have a duty to protect tenants from criminal activity merely because of the landlord/tenant relationship. While acknowledging the narrow exception, stated above, to this general rule, the appellee contends that the circumstances in this case do not fall under that narrow exception. In the instant case, the landlord did nothing more than rent a mobile home to a tenant and require another tenant to mow her lawn. Also, the appellee opines that finding liability in this case would force landlords to police the behavior of their tenants. This, in turn, would place landlords in the untenable position of violating the rights of some tenants, via improper searches, investigations or evictions, in order to protect the safety of other tenants. Finally, the appellee notes that this

Court generally has been reluctant to impose liability where the criminal conduct of a third party was not reasonably foreseeable. *Citing Miller, supra; Jack v. Fritts,* 193 W.Va. 494, 457 S.E.2d 431 (1995); *Yourtee v. Hubbard,* 196 W.Va. 683, 474 S.E.2d 613 (1996); *Overbaugh v. McCutcheon,* 183 W.Va. 386, 396 S.E.2d 153 (1990); and *Doe v. Wal–Mart Stores, Inc.,* 198 W.Va. 100, 479 S.E.2d 610 (1996).

 As noted above, the circuit court dismissed the appellant's complaint, in part, because it found that the appellee had no duty to protect Mrs. Hough from the criminal activity of Mr. Hough. In determining the scope of the duty which an actor owes to another, this Court has focused on the foreseeability of the harm. In *Robertson v. LeMaster,* 171 W.Va. 607, 611–612, 301 S.E.2d 563, 568 (1983), we recognized:

> [T]he obligation to refrain from particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous. Duty, in other words, is measured by the scope of the risk which negligent conduct foreseeably entails. (Citation omitted).

Generally, however, "a person does not have a duty to protect others from the deliberate criminal conduct of third parties." *Miller v. Whitworth,* 193 W.Va. 262, 266, 455 S.E.2d 821, 825 (1995) (citations omitted). We found this general rule applicable to the landlord/tenant relationship in Syllabus Point 6 of *Miller* where we stated:

> Under the common law of torts, a landlord does not have a duty to protect a tenant from the criminal activity of a third party. However, there are circumstances which may give rise to such a duty, and these circumstances will be determined by this Court on a case-by-case basis. A landlord's general knowledge of prior unrelated incidents of criminal activity occurring in the area is not alone sufficient to impose a duty on the landlord. However, a duty will be imposed if a landlord's affirmative actions or omissions have unreasonably created or increased the risk of injury to the tenant from the criminal activity of a third party.

The appellant claims that a duty should be imposed on the appellee under the exception to the general rule recognized in *Miller* because the appellee's actions unreasonably created a risk of injury to Mrs. Hough.

 After carefully considering the allegations contained in the appellant's complaint, we believe that the circuit court erred in dismissing the complaint for failure to state a claim upon which relief can be granted. A liberal reading of the allegations in the complaint, construing the factual allegations in the light most favorable to the appellant, shows that the appellant has stated a claim under the exception to the general rule applicable to the landlord/tenant relationship stated in *Miller, supra.* That is, the appellant has stated a claim that the appellee's affirmative actions or omissions unreasonably created or increased the risk of injury to the decedent from the criminal activity of William Hough. This claim should be determined on the merits at trial.

 Further, we believe the appellant has stated a claim for accomplice liability articulated by this Court in *Courtney, supra.* In Syllabus Point 5 of *Courtney,* we stated:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.

As explained in *Courtney,* this rule is derived from Section 876(b) of the *Restatement (Second) of Torts* (1979). Comment on Clause (b) in the *Restatement* explains in part:

> Advice or encouragement to act operates as a moral support to a tortfeasor and *if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance.* If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act. . . .
>
> The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other. In deter-

mining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered. (Emphasis added).

In *Courtney,* we adopted the six factors set forth above for determining whether the encouragement is a substantial factor in causing the resulting tort.

Accomplice liability was utilized by this Court in *Price v. Halstead,* 177 W.Va. 592, 355 S.E.2d 380 (1987) to affix liability on the passengers in a motor vehicle who had encouraged the driver's negligent operation of the vehicle. In *Price,* the driver was already intoxicated, yet the passengers continued to encourage him to drink and smoke marijuana. Consequently, a collision occurred which resulted in the death or serious injury of passengers in the other vehicle. In Syllabus Point 12 of *Price* we restated the above rule as applicable under the specific facts of that case as follows:

> A passenger may be found liable for injuries to a third party caused by the intoxication of the driver of the vehicle in which he is riding, if the following conditions are met: (1) the driver was operating his vehicle under the influence of alcohol or drugs which proximately caused the accident resulting in the third party's injuries, and (2) the passenger's conduct substantially encouraged or assisted the driver's alcohol or drug impairment.

In the instant case, we are unable to determine whether the appellant can establish accomplice liability for encouraging a tortious act. We do believe, however, that the appellant's complaint states a claim for "accomplice liability" outlined above. We cannot conclude, in other words, that it is clear that no relief could be granted by a jury under the accomplice liability theory *if* the appellant is able to establish as true the allegations contained in his complaint. Of particular relevance, the appellant alleges that the appellee was related to Mr. Hough and knew or should have known about the existence of the protective order. The appellant should be permitted to develop facts consistent with these allegations to support a claim for accomplice liability. Consequently, we find the circuit court erred in granting the motion to dismiss for failure to state a claim upon which relief can be granted.

We find, therefore, that the appellant has stated claims under the exception to the general rule of landlord nonliability articulated in *Miller* and under the theory of accomplice liability set forth in *Courtney.* We take no view, however, as to the appellee's ultimate liability in this case. We merely conclude that from the facts alleged and the determinations that may be made therefrom by a jury, the appellant's complaint was not subject to a motion to dismiss.

## IV.

## CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court of Berkeley County is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.