Okundaye v. Driscoll, No. 83-3-10 Bncv (Wesley, J., May 12, 2011)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

### STATE OF VERMONT

**SUPERIOR COURT**                                    Civil Division
**Bennington Unit.**                                  **Docket No. 83-3-10 Bncv**

**DEREK OKUNDAYE**
     **Plaintiff,**

    **v.**

**WILLIAM DRISCOLL**
     **Defendant.**

### Opinion and Order on
### Motions for Summary Judgment

Plaintiff Derek Okundaye was injured when Donald O'Dell struck him in the back of the head with a crowbar at the Walk-in-the-Woods Motel in Woodford, Vermont.  This case represents Plaintiff's attempt to hold the owner of the motel liable for the intentional, criminal acts of Donald O'Dell.  To this end, Plaintiff has asserted various theories under which he believes the motel owner can be found liable for his injuries.  Currently pending is Defendant's motion for summary judgment and Plaintiff's motion for partial summary judgment.

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements required by Rule 56(c)(2), show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3).  Where both parties seek summary judgment, "each must be given the benefit of all reasonable doubts and inferences when the opposing party's motion is being evaluated." *Northern Sec. Ins. Co. v. Rosenthal*, 2009 VT 83, ¶ 4, 186 Vt. 578 (citation omitted).  Because the undisputed facts do not support any theory of liability, Defendant's Motion for Summary Judgment is **GRANTED**.

### Facts

The following facts are summarized in a light most favorable to the Plaintiff.  In February of 2009, Plaintiff was staying at the Walk-in-the-Woods Motel with his then wife, Rebecca Lever.  Ms. Lever was a month-to-month tenant who worked for

Defendant William Driscoll. Donald O'Dell was also a month-to-month tenant at the motel, and he plowed the parking lot in exchange for a reduction in his monthly rent. Defendant owns the motel where both men were staying, but had never met Plaintiff at the time of the incident.

Around two years prior to the incident, Defendant rented a room to O'Dell at the suggestion of two motel tenants. At that time, Defendant was aware that O'Dell was on probation and that he had been convicted of driving while under the influence (DWI). O'Dell's criminal record includes the following convictions:

2003- DWI, third offense
2000- violation of probation
1996- grand larceny
1991- attempted burglary
1991- burglary
1990- possession of stolen property
1988- escape
1987- aggravated assault
1987- false information to a police officer
1981- criminal trespass
1981- issuing bad check
1981- petty larceny

After renting to O'Dell, Defendant learned that his brother was O'Dell's probation officer. Defendant never asked his brother about O'Dell's criminal record, nor did he perform a criminal background check. Defendant had checked with his brother about the criminal history of other tenants before.

On February 18, 2009, O'Dell was plowing the parking lot of the motel. Plaintiff was concerned that snow would be plowed into the walkway and he approached O'Dell while he was plowing. The two conversed and then O'Dell continued plowing and Plaintiff went back inside. A short time later there was another confrontation between Plaintiff and O'Dell outside. O'Dell got out of his truck and the two argued. When Plaintiff began to walk away, O'Dell struck him on the back of the head with a crowbar. As a result, Plaintiff suffered various injuries and O'Dell was convicted of aggravated assault with a deadly weapon.[1]

_____

[1] O'Dell's conviction and sentence of 15 years to life as a habitual offender was upheld on appeal. *State v. O'Dell*, No. 2010-172 (Vt. Apr. 4, 2011) (unpublished mem.), available at http://www.vermontjudiciary.org/d-upeo/eo10-172.pdf.

2

## Discussion

Plaintiff asserts liability on the part of Defendant under the following theories: (1) vicarious liability; (2) negligent hiring; (3) negligent supervision; (4) negligent renting; and (5) consumer fraud. The Court will discuss these claims in turn.

### Vicarious Liability

Plaintiff first argues that O'Dell was acting as Defendant's agent, servant and employee at the time of assault and that Defendant is therefore vicariously liable for O'Dell's actions. Under the doctrine of respondeat superior "an employer or master is held vicariously liable for the tortious acts of an employee or servant committed during, or incidental to, the scope of employment." *Brueckner v. Norwich Univ.*, 169 Vt. 118, 122-23, (1999). Of particular import to this case is whether O'Dell's conduct fell within the scope of his employment.

To establish that a servant's conduct falls within the scope of his or her employment, a plaintiff must demonstrate that the conduct:

> (a) ... is of the kind the servant is employed to perform; (b) ... occurs substantially within the authorized time and space limits; (c) ... is actuated, at least in part, by a purpose to serve the master; and (d) in a case in which force is intentionally used by the servant against another ... is not unexpectable by the master.

*Sweet v. Roy*, 173 Vt. 418, 430-31 (2002)(citing Restatement (Second) of Agency § 229(1)(1958)). The conduct of an employee falls outside the scope of employment if it is "different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Restatement (Second) of Agency § 228(2); *Sweet*, 173 Vt. at 431. "[T]he inquiry turns not on whether the act done was authorized or was in violation of the employer's policies, but rather whether the acts can properly be seen as intending to advance the employer's interests." *Sweet*, 173 Vt. at 431-32 (2002)(citation omitted).

In *Sweet v. Roy*, plaintiff brought suit against a trust which owned a mobile home park and the park manager, among others. 173 Vt. 418. Plaintiff alleged that the park manager broke her windows and cut her electric line in an effort to illegally evict her. *Id.* at 425. At the close of evidence, the Superior Court found that the trust was vicariously liable for the actions of the park manager as a matter of law. *Id.* at 426. The Supreme

3

Court upheld this determination, noting that:

> In this case, the trust has consistently taken the position that plaintiff was a trespasser, and, therefore, it could use self-help means to evict her. There is no dispute that Leon Roy's responsibility as park manager included the removal of trespassers from the park. The trustees were on notice that Leon used surreptitious vandalism and utility disconnection as a means of self-help eviction. They were parties to the 1986 action in which the court found Leon used these methods to evict Mark Wright and awarded $10,234 in compensatory and punitive damages against them. Yet, they made no change in their methods of operation after that judgment. Finally, there is no evidence that Leon acted out of personal animus against plaintiff, rather than for the business interests of the park."

*Sweet*, 172 Vt. at 432-33 (citations omitted).

The facts of this case are in stark contrast to those in *Sweet* and the factors set forth in the Restatement. First, O'Dell's responsibilities were limited to plowing snow and cannot reasonably be understood to include striking someone with a crowbar. Second, there is no evidence here that Defendant authorized the assault, or that O'Dell had previously assaulted others while engaged in his work duties and that Defendant explicitly or tacitly approved of this conduct while continuing his employment. Third, it is clear that O'Dell's actions could not have furthered Defendant's interest in having the parking lot plowed, or in any other regard. Plaintiff was walking away at the time he was struck by O'Dell, thus any interference with his plowing had ended. Indeed, Plaintiff's own filings suggest that the motivation for this crime was O'Dell's personal animus toward African-Americans, rather than to benefit Defendant. Fourth, O'Dell's acts must be seen as unexpectable by Defendant based on the nature of the employment, which did not include the expectation of significant contact with the public, or the potential for confrontation. Thus, O'Dell's actions when hitting Plaintiff with a crowbar were not within the scope of his employment and Defendant cannot be held vicariously liable for O'Dell's criminal acts. *Brueckner*, 169 Vt. at 122-23; See also *Rubin v. Yellow Cab Co.*, 507 N.E.2d. 114 (Ill.App.Ct. 1987) (cab driver acted outside of the scope of his employment when he hit another driver with a pipe).

**Negligent Hiring, Negligent Supervision, and Negligent Renting**

Plaintiff next claims that Defendant can be found liable under several theories in negligence. In order to establish a claim in negligence, "a plaintiff must demonstrate that

4

the defendant owed a legal duty to the plaintiff, the duty was breached, the breach constituted the proximate cause of plaintiff's harm, and plaintiff suffered actual loss or damage as a result." *Rubin v. Town of Poultney*, 168 Vt. 624, 625 (1998). Recovery under any theory in negligence is foreclosed absent evidence establishing some duty that Defendant owed Plaintiff, and also that Defendant's acts or omissions proximately caused Plaintiff's injuries. *Id*.

*Duty*

The core issue on summary judgment in this case is whether Defendant owed a duty to protect Plaintiff from the criminal assault by O'Dell. Absent a duty of care, an action for negligence fails. *Id*. Whether a defendant owes a duty of care to the plaintiff is a question of law for the court to decide. *Edson v. Barre Supervisory Union No 61*, 2007 VT 62, ¶9, 182 Vt. 157.

There is generally no duty to protect someone from crimes committed by a third party. *Edson v. Barre Supervisory Union No. 61*, 2007 VT 62, ¶13, 182 Vt. 157 (upholding summary judgment finding no duty on part of school personnel on claim of negligent failure of supervision as to student who left school grounds with known non-student, and was later murdered by an acquaintance of the non-student). Exceptions to that general principle are found "only where the defendant had special knowledge or notice upon which to impose a duty to anticipate the wrongful act." *Id.* (citing *(Sabia v. State*, 164 Vt. 293, 305-06 (1995))(SRS had a "special relationship" by virtue of its statutory duty to protect abused children that required it in the circumstances to protect against sexual abuse by a stepfather); but see *Estate of Sumner v. Dept. of Social and Rehabilitation Services*, 162 Vt. 628, 629 (1994)(no duty by SRS to anticipate homicidal act by a child in its custody).

There are no Vermont decisions addressing whether the relationship between a landlord and tenant can create a duty to protect against the criminal acts of third parties on the premises.[2] However, the Second Circuit stated that "[u]nder Vermont law, as in most states, a landlord is not an insurer of the safety of a tenant; rather, the duty of a landlord has been characterized as one of reasonable diligence and ordinary care to

---

[2] For the purposes of this discussion, the Court will assume that Plaintiff was Defendant's tenant by virtue of co-occupancy of the apartment he shared with his wife, although Defendant had never met him.

5

maintain, in a reasonably safe condition, areas of the premises over which he has control." *Doyle v. Exxon Corp.*, 592 F.2d 44, 46 (2d Cir. 1979)(applying Vermont law upholding jury verdict imposing partial liability on commercial landlord for injuries sustained during robbery of premises, when better security measures had been promised). The Court also noted the "trend in the law in other jurisdictions imposing liability upon a lessor for the failure under special circumstances to provide reasonable security measures to protect a lessee from the criminal activities of third persons." *Id*,

The question in this case is whether a landlord has a duty to protect tenants from the intentional, criminal acts of a tenant-employee who is lawfully on the property, when the only special circumstances are limited to the facts of the tenant's criminal record. The primary consideration when analyzing whether a duty exists is the foreseeability of the risk. *Lenoci v. Leonard*, 2011 VT 47, ¶13 (citation omitted). The foreseeability of harm arising from landlord-tenant relationships due to the criminal acts of third persons has been addressed in other jurisdictions, providing guidance for this Court's determination.

In *Giggers v. Memphis Housing Authority*, 277 S.W.3d 359 (Tenn. 2009), a tenant in a housing project got into an argument with the housing project's security guard. He fired shots in the direction of the guard's office, killing another tenant who happened to be near the office at the time. *Id*. The decedent's family brought suit against the Memphis Housing Authority (MHA) alleging that it was negligent for failing to investigate the shooter's background and failing to evict him four years earlier in accordance with MHA policy after he stabbed another tenant with a pen knife. *Id*. at 361. The shooter's criminal record included two aggravated assaults which were more than twenty years old and he had pled guilty to firing a weapon within the city limits. *Id*. at 362. The Court of Appeals granted the MHA's motion for summary judgment based on absence of duty. On appeal, the Tennessee Supreme Court reversed, holding that MHA's general knowledge of criminal activity within its housing complexes, together with its particular knowledge that the shooter had stabbed another tenant on the premises four years earlier, made the foreseeability of his subsequent violent act a proper question for a jury. *Id*. at 367.

In *Estate of Hough v. Estate of Hough*, 205 W.Va. 537 (W.Va. 1999), a decedent's estate brought a wrongful death action against her landlord, alleging that he subjected her to a high risk of harm when he rented the mobile home directly across from hers to her husband, knowing that she had obtained a protective order against him. The suit further alleged that landlord directly exposed decedent to danger by instructing her to either mow the lawn in front of her trailer or else move, after which her husband shot and killed her while she mowed. *Id.* The lower court dismissed the complaint for failure to state claim upon which relief can be granted and the estate appealed. *Id.* at 541. The West Virginia Supreme Court of Appeals reversed holding that the factual allegations viewed in a light most favorable to the estate could support the conclusion that the landlord had unreasonably created or increased the risk of injury to the decedent from the criminal activity of her husband. *Id.* at 545.

Other decisions find no duty where the evidence to support foreseeability is more tenuous. In *Molosz v. Hohertz*, 957 P.2d 1049 (Colo.App. 1998), neighbors living proximate to rented premises sued the owners for the negligent retention of a violent tenant, who was also the landlords' son, after the tenant fired several shots through their windows. "[P]laintiffs alleged that, by allowing their son to rent the property with knowledge of his mental instability and prior violent behavior, defendants breached a duty to protect third parties from their tenant's criminal conduct." *Id.* at 1050. The trial court assumed that the landlords were aware of their son's criminal record and two prior acts of violence, but held that they did not owe a duty to the Plaintiffs. *Id.* at 1051. The Appeals Court affirmed stating that "even with plaintiffs having demonstrated defendants' awareness of the shooter's criminal record, such evidence was insufficient to establish that a duty should have been imposed upon the landlords to protect third parties from the harm that occurred." *Id.*

In *Anderson v. Green Street LLC*, 2011 WL 341709 (Mass.Super. Jan. 18, 2011), involving facts closely aligned to those here, a tenant's estate filed suit against the landlord of an apartment building, asserting that another tenant's lengthy criminal past and heroin addiction imposed a duty on the landlord not to rent to him. The landlord moved for summary judgment. The court found that it was not reasonably foreseeable that the tenant would beat a cotenant during a fight over a personal matter. *Id.* at *1. The

perpetrator of the assault was both a tenant of the building and worked shoveling snow and moving furniture for the landlord. *Id*. The landlord never performed a background check on him because he thought it was too expensive. *Id*. The landlord was aware that the perpetrator "had a juvenile criminal background and that he had some issued with the law." *Id*. at \*2. He also knew that he had a heroin addiction. *Id*. The Court found that the landlord did not owe the tenant a duty stating that: "A landlord cannot reasonably be expected to control the interpersonal relationships of tenants or to predict from a criminal record whether one friend poses a threat to another friend, both of whom live in the same apartment building. To impose liability here would induce landlords to decline housing to those with a criminal record in the absence of evidence of an actual threat to cotenants or individual tenants." *Id*. at \*5.

Consistent with the analysis required by *Lenoci*, 2011 VT 47, ¶13, the prevailing theme in the cases above is whether it would be reasonably foreseeable that one tenant would commit a crime against another tenant or neighbor. The cases demonstrate how particular circumstances affect whether a crime against a tenant is foreseeable. The more specific a threat, or the closer the relation of prior crimes to the premises, or the greater the accumulation of indicia of violence, the more likely it becomes that a crime by that tenant is reasonably foreseeable, and that a corresponding duty will be imposed on the landlord to protect against a predictable harm. Thus when the Memphis Housing Authority was aware that a tenant had previously stabbed someone on the premises, it was foreseeable that he would severely injure someone else on the premises. *Giggers*, 277 S.W.3d 359. Similarly, where a landlord knowingly rented a trailer to a man across from a woman who had just obtained a protective order against him, the landlord had a duty to protect the tenant. *Estate of Hough*, 205 W.Va. 537.

Conversely, where a tenant's criminal history does not have a direct connection with the property, and where there is no evidence of specific threats against residents, crimes committed by a tenant are not foreseeable. Thus, where a landlord knew of general mental instability and prior violent behavior of a tenant—not related to the apartment building or aimed at other tenants—that tenant's criminal behavior was not foreseeable and the landlord did not owe a duty to protect others residing nearby. *Molosz*, 957 P.2d 1049. Similarly, where the only evidence of a threat was a prior criminal

8

history and drug addiction, crimes by the tenant were not foreseeable, and the landlord did not owe other tenants a duty to protect them. *Anderson*, 2011 WL 341709.

In this case, Plaintiff asserts that O'Dell's criminal history, including a decades old aggravated assault conviction, made the subsequent crime against him foreseeable. However, even assuming that Defendant could have become knowledgeable of O'Dell's criminal record, this would not have made the criminal assault against Plaintiff foreseeable. There was no indication that O'Dell had ever harmed someone at the motel before, or that there was a particularized risk to another tenant or class of tenants at the motel. Reasonable societal expectations entitle landlords and employers to rely upon the criminal justice system's determination that a convict is ready to rejoin the community at large. If reliance on such a determination, without more, becomes a cognizable basis for imposing liability in tort, significant adverse collateral consequences are sure to follow. See *Anderson*, 2011 WL 341709 at *5 (imposing duty on landlords would create disincentives likely to affect the ability to find housing for anyone with criminal record); *Edson v. Barre Supervisory Union No. 61*, 2007 VT 62, ¶ 16 ("[e]levating the duty of care to ensure that students with known truancy, drug abuse, or other behavioral problems remain on campus would not only be financially and logistically burdensome, but would likely detract from schools' primary purpose by diverting significant resources from education to security").

In sum, while special aspects of a landlord-tenant relationship might conceivably place an obligation on a landlord to take reasonable measures to protect one tenant from another, no such duty could arise from the circumstances here. Where the only indication that a tenant poses a risk to other tenants is a criminal record with no specific ties to the residence or a particular victim, future crimes by that tenant are not foreseeable. Even more convincing in this case is the fact that O'Dell's conviction for aggravated assault was more than twenty years old.[3] Thus, because no reasonable person could foresee that

---

[3] As a matter of evidence, the law takes care to discourage resort to the incendiary assumption that prior bad acts are logically indicative of a future propensity toward assaultive or vicious behavior. V.R.E. 404(b). The single crime of violence in the criminal history relied on by Plaintiff is more than twenty years old, robbing it of any probative effect even in the limited circumstances when convictions might be deemed admissible for impeachment. V.R.E. 609(b).

O'Dell would commit an assault solely because he had a criminal record, Defendant did not owe Plaintiff a duty to protect him. *Lenoci*, 2011 VT 47, ¶13.

*Proximate Cause*

Even if the Court were to find that Defendant owed Plaintiff a duty and breached that duty, recovery would still be denied because any action by the Defendant did not proximately cause Plaintiff's injuries. Proximate cause is the law's method of keeping the scope of liability for a defendant's negligence from extending by ever-expanding causal links. *Roberts v. State*, 147 Vt. 160, 163 (1986). Proximate cause requires "a causal connection between the act for which the defendant is claimed to be responsible and which is alleged to be negligent and the resulting flow of injurious consequences." *Rivers v. State*, 133 Vt. 11, 14 (1974). "But for" causation alone is not sufficient. *Collins v. Thomas*, 2007 VT 92, ¶ 8, 182 Vt. 250. While "proximate cause ordinarily is characterized as a jury issue, it may be decided as a matter of law where the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way." *Id*.

Two recent cases illustrate these principles. In *Collins v. Thomas*, 2007 VT 92, a young man died after he fell from the back of a moving pickup truck while he was intoxicated. The decedent's family sued the driver of the truck asserting that he was negligent for driving a vehicle which was uninspected and in disrepair. *Id*. at ¶1. The Vermont Supreme Court held that the accident could have occurred regardless of the motor vehicle violations and that "the fall was not within the natural flow of 'injurious consequences' of the truck's defects." *Id*. at ¶9. As such, Defendant's conduct was not the proximate cause of plaintiff's injury. *Id*. at ¶10.

In *La Croix v. Mueller*, No. 2010-235 (Vt. Oct. 21, 2010) (unpublished mem.), available at http://www.vermontjudiciary.org/d-upeo/eo10-235.pdf, the defendant parked in an alley adjacent to an auto parts store in an area marked "loading zone". When defendant returned to her vehicle, she discovered that the alley was blocked by one of the store's company trucks. *Id*. at 1. One of the store's employees attempted to move the truck so defendant could leave, and struck and injured the plaintiff. *Id*. Plaintiff sued the defendant arguing that she contributed to his injury by parking in an unauthorized manner, an act that played a substantial role in the events leading to the injury. *Id*. The

Windham Superior Court (Wesley, J.) found that Plaintiff's injuries were not the natural and probable consequences of defendant's acts of parking in a loading zone and that his "but for" analysis was "far too attenuated to permit a reasonable jury to find proximate cause." *Id*. at 2. The Supreme Court affirmed, noting that "[t]he cause-in-fact of La Croix's injuries was Ethier's act of backing up his truck, and defendant played no role in this act whatsoever." *Id*. at 3.

As in *La Croix*, the cause-in-fact of Plaintiff's injuries here was O'Dell's criminal assault upon him, an incident in which Defendant had no involvement. Similarly to *Collins*, the criminal assault by O'Dell was not a natural or probable consequence of Defendant's actions. No reasonable jury could find that hiring or renting to someone with a twenty year old assault conviction proximately caused injury attributable to the hiree's criminally assaultive behavior. The proximate cause of Plaintiff's injuries was O'Dell's intentional, criminal acts, and Plaintiff's effort through "but for" reasoning to forge a causal nexus back to Defendant must fail as the product of a logical fallacy.

The efforts in these cases to posit causal connections between some act of the defendant and the ultimate harm strain the bounds of reason and logic upon which the law insists in determining proximate cause. The Supreme Court's reference in *LaCroix* to a leading treatise applies equally here: "[i]n a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the discovery of America and beyond. . . . But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would set society on edge and fill the courts with endless litigation… as a practical matter, then, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability." W. Prosser, Handbook of the Law of Torts, § 45, at 312 (1941) (quotation omitted). Therefore, the Court finds as a matter of law that Defendant's actions–almost two years prior to the assault–of renting to and hiring O'Dell did not proximately cause Plaintiff's injuries. *Collins*, 2007 VT 92, ¶ 8.

### Consumer Fraud

Plaintiff contends that Defendant's failure to investigate O'Dell's criminal history and then inform occupants of the motel before renting to them is deceptive or fraudulent such that it is actionable under the Consumer Fraud Act ("CFA"). The CFA, 9 V.S.A.,

11

chapter 63, is meant "to protect the public from unfair and deceptive business practices and to encourage fair and honest competition." *Bisson v. Ward*, 160 Vt. 343, 349 (1993). This Act has been used in the landlord-tenant context when the rented premises were in violation of health or safety codes, *L'Esperance v. Benware*, 2003 VT 43, 175 Vt. 292, and for nondisclosure of known defects, *Bisson*, 160 Vt. 343, 351.

Plaintiff offers no support for the proposition that the CFA requires the hospitality industry to investigate the criminal history of prospective tenants, or to inform current tenants of a guest's negative criminal history. Neither *Bisson* nor *L'Esperance* stand for that proposition. The Supreme Court concluded in *Bisson* that defendants had committed a deceptive act in commerce because "[b]y renting the apartment, landlords impliedly represented to tenant that the apartment was in compliance with the law," yet they knew "that the apartment was in violation of health and safety codes". *Bisson*, 160 Vt. at 351. *L'Esperance* similarly involves rental of a premises which was subject to known housing code violations. Plaintiff can make no comparable claim of a *per se* deceptive act inherent in Defendant's alleged failure to investigate and disclose O'Dell's criminal history to other tenants. There is no case law extending the CFA to cover such circumstances, and the Court concludes that judgment as a matter of law must be granted based on Plaintiff's failure to establish any deceptive or fraudulent act by Defendant upon which to ground liability under the CFA.

## Conclusion

Plaintiff's arguments depend, in substantial measure, on the notion that O'Dell's criminal record made him dangerous or vicious and his presence on the premises made it unreasonably dangerous. The slippery slope on which this argument perches is readily apparent. Unbounded by statutory guidance, the Court cannot conclude that the common law of negligence imposes a duty on landlords to investigate the criminal history of prospective tenants or employees, disclose it to other tenants, or use it to deny occupancy or employment as a means of maintaining the safety of leased premises. The policy implications associated with imposing such a duty, and leaving its parameters to a jury determination by a "reasonable person" standard, are vast and unrecognized by any Vermont jurisprudence. However the argument is couched, be it in negligence, vicarious liability, or consumer fraud, the only conclusion that can be drawn from these facts is that

12

Donald O'Dell was the sole cause of Plaintiff's injuries, and that Defendant owed no duty to Plaintiff as regards to O'Dell's employment or presence on the premises. To hold otherwise would subject landlords and employers to expansive liability which could only be avoided by refusing to hire or lease living space to ex-convicts, who would then be rendered both unemployable and homeless.

Based on the foregoing, it is hereby **ORDERED**:

The Defendant's motion for summary judgment is **GRANTED**.

Plaintiff's motion for partial summary judgment is **DENIED**.

Defendant's motion for discovery sanctions is dismissed as **MOOT**.

DATED                              , at Bennington, Vermont,


_____
John P. Wesley
Presiding Judge